IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

M.J.J,

    Plaintiff,

v.

POLK COUNTY SHERIFF'S DEPARTMENT,
DARRYL L. CHRISTENSEN,

    Defendants

and

WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION,

    Intervenor.

Case No. 15-cv-433

## INTERVENOR WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff M.J.J. ("Plaintiff") filed this lawsuit against Defendant Darryl L. Christensen ("Christensen") and Polk County seeking to recover damages for injuries Plaintiff claims she sustained as a result of sexual interactions including sexual intercourse she had with Christensen. The sexual activity occurred at various times between 2011 and 2014 when Plaintiff was an inmate in the Polk County Jail and when Christensen worked for Polk County as a corrections officer/jailer. Christensen resigned his employment with Polk County in October of 2014 and thereafter was charged with five separate criminal charges of second degree sexual assault stemming in part from his treatment of and interactions with Plaintiff. Christensen pled guilty to all five charges and was sentenced prison.

Intervenor Wisconsin County Mutual Insurance Company ("WCMIC") retained counsel to represent Christensen in this matter under a full and complete reservation of rights. WCMIC now moves for summary judgment seeking declarations that pursuant to the terms of the policy of insurance WCMIC issued to Polk County (1) there is no insurance coverage available to Christensen under the Public Entity Liability policies of insurance issued by WCMIC to Polk County for Christensen's actions in this case; and (2) WCMIC has no duty to defend or indemnify Christensen for any of the claims asserted by Plaintiff against him in this case. Because no genuine issue of material fact exists, and WCMIC is entitled to judgment as a matter of law on its Intervening Complaint, the Court should grant WCMIC's Motion for Summary Judgment.

## STATEMENT OF FACTS

All material facts are outlined in WCMIC's Proposed Findings of Fact.

## ARGUMENT

Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). When determining whether a genuine issue of material fact exists, the court considers evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

2

A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. This court will grant summary judgment if "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party asserting that a fact is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). When the moving party has met the standard under Rule 56, summary judgment is mandatory. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103-04 (7th Cir. 2008), citing Fed. R. Civ. P. 56.

I. CHRISTENSEN WAS NOT AN "INSURED" AS DEFINED UNDER WCMIC'S POLICIES DURING THE EVENTS AT ISSUE IN PLAINTIFF'S COMPLAINT.

The construction of an insurance policy presents a question of law. *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 2009 WI 13, ¶ 27, 315 Wis. 2d 556, 759 N.W.2d 613. An insurance policy is a contract for insurance. Policy language is construed as it would be understood by a

3

reasonable person in the position of the insured. *Frost v. Whitbeck*, 2002 WI 129, ¶ 20, 257 Wis. 2d 80, 654 N.W.2d 225; *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984).

Provisions in an insurance policy should not be read in isolation, but rather should be read in the context of the policy as a whole. *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 61, 255 Wis. 2d 61, 647 N.W.2d 223. It is sometimes necessary to look beyond a single clause or sentence to capture the essence of an insurance agreement. *Folkman v. Quamme*, 2003 WI 116, ¶ 21, 264 Wis. 2d 617, 665 N.W.2d 857. When the policy's language is unambiguous, courts enforce the contract as written, without resorting to the rules of construction or principles from case law. *Plastics Eng'g Co.*, 315 Wis. 2d at ¶ 27.

To determine whether a duty to defend and indemnify exists, the court must first determine whether the insurance policy "makes an initial grant of coverage - i.e., whether the insurer has a duty to indemnify its insured - for the claims asserted." *Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, ¶ 22, 311 Wis. 2d 548, 751 N.W.2d 845. If the court finds an initial grant of coverage, the court then "[e]xamines the policy's exclusions to determine whether they preclude coverage." *Id.* at ¶ 23. If an exclusion is found to apply, the court then "look[s] to see whether any exception to that exclusion" reinstates coverage. *American Family Mutual Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65.

Coverage under WCMIC's policies issued to Polk County is unambiguously limited to those who fit the definition of an "insured." Christensen is not an "insured" under WCMIC's policy as a matter of law. WCMIC's insurance policy defines an "insured" as "past or present employees or elected or appointed officials while acting within the scope of their employment or

4

authority. . . ." (IPFF No. 56.)[1] Whether an employee was acting within the scope of employment may be determined on summary judgment. *Estate of Murray v. Travelers Ins. Co.*, 229 Wis. 2d 819, 831, 601 N.W.2d 661 (Ct. App. 1999).

Under Wisconsin law, the phrase "scope of employment" has been defined as follows:

Conduct of a servant is within the scope of employment if, but only if:

a. it is of the kind he is employed to perform;
b. it occurs substantially within the authorized time and space limits; [and]
c. it is actuated, at least in part, by a purpose to serve the master. . .

*Olson v. Connerly*, 156 Wis. 2d 488, 499, 457 N.W.2d 479 (1990). The Wisconsin Supreme Court has stated:

The act cannot be deemed to be within the course of the employment, unless, upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary, part or incident of the service contemplated.

*Cameron v. City of Milwaukee*, 102 Wis. 2d 448, 457-58, 307 N.W.2d 164 (1981).

Scope of employment has also been defined to include those acts which are:

. . . so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.

*Id.* at 457-58.

Much of the analysis of whether an employee acts within the scope of employment focuses on the employee's intent at the time of the alleged wrongful acts. *Korntved v. Advanced Healthcare SC*, 2005 WI App 197, ¶¶ 12-13, 286 Wis. 2d 499, 509, 704 N.W.2d 597. When an employee's intent as to the alleged act is purely personal, the employee must be deemed to be acting "outside the scope of employment" as a matter of law. *Id.*

Further, for an act to be deemed within the scope of employment, the act must be a "natural, not disconnected and not extraordinary, part or incident of the service contemplated."

---

[1] WCMIC will cite to its Proposed Findings of Fact in this brief as "IPFF."

*Cameron v. City of Milwaukee*, 102 Wis. 2d 448, 457-58, 307 N.W.2d 164, 168 (1981). An employee is not acting within the scope of employment if he steps aside from the prosecution of the employer's business to accomplish an independent purpose of his own. *Finsland v. Phillips Petroleum Co.*, 57 Wis. 2d 267, 276, 204 N.W.2d 1, 6 (1973). Where the acts complained of are too little actuated by a purpose to serve the employer in order to permit the inference that the events giving rise to the injury fell within the scope of employment, there is no genuine issue of material fact and the court should determine that there is no initial grant of coverage as a matter of law. *See id.*

An employee's sexual contact with a third party is not within the scope of employment where the employee acted in knowing violation of the employer's rules or policies. In *Olson v. Connerly*, 156 Wis. 2d 488, 497-501, 457 N.W.2d 479 (1990), the court held that a physician/therapist who had sex with a medical assistant was acting outside the scope of his employment for purposes of indemnification under Wis. Stat. § 895.46(1)(a)[2]. In *Block v. Gomez*, 201 Wis. 2d 795, 549 N.W.2d 783 (Ct. App. 1996), the court held that a drug abuse counselor who had sex with a patient acted outside the scope of his employment, noting that the therapist "knew he was forbidden by the clinic to enter into a sexual relationship with his patients." In *LLN v. Clauder*, 209 Wis. 2d 674, 563 N.W.2d 434 (1997), a priest who had sex with a woman who viewed him as her personal pastor acted outside the scope of his employment for purposes of imposing *respondeat superior* liability on his employer, because he was aware that using his office as a counselor to initiate the sexual relationship constituted conducted forbidden by his employer. *See also Meredith M. v. Pennsylvania General Ins. Co.*,

---

[2] This statute requires indemnification for employees of state and political subdivisions for actions taken by the employee "with the scope of employment. . . ." Wis. Stat. § 895.46(1)(a). Thus, the question of scope of employment implicated in WCMIC's policy is identical to the scope of employment analysis under Wis. Stat. § 895.46(1)(a).

190 Wis. 2d 468, 528 N.W.2d 91 (Ct. App. 1994) (finding employee acted outside the scope of employment when he sexually assaulted a client); *S.J.A.J. v. First Things First, Ltd.*, 2000 WI App 233, ¶ 23, 239 Wis. 2d 233, 619 N.W.2d 307 (holding counselor's actions in fostering a sexual relationship with a patient were beyond the scope of employment).

Numerous federal cases applying Wisconsin law come to the same conclusion. In *NR Doe v. St. Francis Sch. Dist.,* 834 F. Supp. 2d 889, 901 (E.D. Wis. 2011), the court ruled that a teacher's actions in engaging a sexual relationship with her student were not within the scope of her employment for purposes of insurance coverage because the teacher's actions were in violation of her employer's policies which she knew, and she acted despite her knowledge. *See also Doe v. Time Warner Cable of SE Wisconsin, L.P.*, 07-C-781, 2007 U.S. Dist. LEXIS 87262, 2007 WL 4143226, at *3 (E.D. Wis. Nov. 19, 2007) (denying application of respondeat superior doctrine where manager sexually assaulted a co-worker after walking her to her car on work property); *see also S.V. v. Kratz*, 2012 U.S. Dist. LEXIS 164152, *14 (E.D. Wis. Nov. 15, 2012) (Wisconsin District Attorney's text message sexual solicitation of plaintiff was outside the scope of his employment).

When Christensen engaged in the sexual acts at issue in this case, he did so knowing that they were wrong and in violation of Polk County policies. (IPFF Nos. 23 and 35.) In fact, Christensen's sole purpose in engaging in the sexual acts with Plaintiff was to serve his own individual desires. (IPFF No. 48.) Christensen confirmed that when he engaged in the sexual acts with Plaintiff, he attempted to hide his actions because he knew if he did not do so he would be fired. (IPFF Nos. 34 and 36.)

The undisputed fact is that Christensen knew that it was wrong and against Polk County policies to engage in sexual contact with Plaintiff. He did so anyway. There is no dispute that

Christensen's job duties did not involve sexual contact with inmates; in fact, Christensen's job with Polk County in no way, shape or form involved sexual contact with inmates. (IPFF No. 25.) Christensen's sole purpose in engaging in the sexual contact with Plaintiff was to satisfy his own personal desires; his purpose was not motivated to serve Polk County. (IPFF Nos. 48 and 49.)

The facts of this case require the conclusion that Christensen's conduct falls outside the scope of his employment as a matter of Wisconsin law. See *LLN*, 203 Wis. 2d at 509; *Block*, 201 Wis. 2d at 807. Thus, Christensen does not meet the definition of an "insured" under WCMIC's policies, and therefore there is no insurance coverage to him for the claims asserted by Plaintiff in this matter.

II.   THE EXCLUSION FOR WILLFUL VIOLATION OF PENAL STATUTES ALSO PRECLUDES COVERAGE.

In addition to lacking status as an "insured," Christensen's alleged conduct forming the basis for Plaintiff's claims against him are predicated on the same conduct constituting violation of Wis. Stat. § 940.225(2)(h), second degree sexual assault. That statute provides as follows:

Whoever does any of the following is guilty of a Class C Felony.

> (h) Has sexual contact or sexual intercourse with an individual who is confined in a correctional institution if the actor is a corrections staff member . . . .

The exclusion in WCMIC's policies for willful or intentional violation of penal statutes has been held to unambiguously exclude criminal conduct. *See Gillund v. Meridian Mut. Ins. Co.*, 323 Wis. 2d 1, 778 N.W.2d 662 (Ct. App. 2009). In *Gillund*, a man intentionally and secretly videotaped and photographed his niece nude and in stages of undress in places where she had a reasonable expectation of privacy, namely her bedroom and bathroom, without her knowledge or consent. *Gillund*, 323 Wis. 2d 1, ¶ 2. The man was charged in Winnebago County

Circuit Court with four counts of Making a Visual Representation of Nudity, in violation of Wis. Stat. § 944.205(2)(a) (1999-2000). Although he was not convicted, at his deposition he admitted he was guilty of the charges and that he intended to capture images of his niece nude. The court held that the plain meaning of the exclusion required the conclusion that no coverage existed for plaintiff's claims because all elements of the crime were conceded. The court found the plain meaning of the exclusion extended the exclusion to conduct that could potentially violate criminal law, regardless of a conviction. Id. at ¶¶ 23-24.

Similarly, in *National Fire & Cas. Co. v. West By and Through North*, 107 F.3d 531 (7th Cir. 1991), the Seventh Circuit held that an officer's conduct in having sexual contact with a minor fell within the exclusion. In *Carney v. White*, 483 F. Supp. 462, 472 (E.D. Wis. 1994), the court held that under Wisconsin law, because the complaint alleged intentional conduct that violated penal statutes, the insurer was under no obligation to defend the insured officer. *Id.* at 462, *aff'd* 60 F.3d 1237 (7th Cir. 1995). In reviewing the lower court's decision, the Seventh Circuit did not address whether the defendant held the requisite intent to commit the crime. Rather, in excluding coverage, the court focused on two facts: (1) that the complaint alleged acts that *could* violate the penal statute, and (2) that the complaint alleged that the defendant intentionally committed the acts. *Carney*, 60 F.3d at 1280-81. Because the defendant was alleged to have willfully violated a penal statute, the Seventh Circuit held that any injury resulted from such conduct was excluded from coverage. *Id.* Finally, in *N.R. Doe*, the Eastern District of Wisconsin held that the same exclusion precluded insurance coverage for a student's lawsuit against a teacher for sexual activities with the student. *N.R.* Doe, 834 F. Supp. 2d at 901.

9

Plaintiff's claims allege intentional violation of a penal statute. And, in fact, Christensen pled guilty to second degree sexual assault of the Plaintiff, in violation of Wis. Stat. § 940.225(3m), which statute provides as follows: "Except as provided in sub. (3), whoever has sexual contact with a person without the consent of that person is guilty of a Class A misdemeanor." Wis. Stat. § 940.225(3m). Christensen has admitted to his guilty plea and subsequent conviction. Christensen has admitted to his guilty plea and subsequent conviction. (IPFF Nos. 40-47.) By pleading guilty, he has admitted that he intentionally violated a penal statute. *Crowall v. Heritage Mutual Ins. Co.*, 118 Wis. 2d 120, 346 N.W.2d 327 (Ct. App. 1984) (a fully litigated criminal conviction can be used for collateral estoppel purposes in a subsequent civil action against that same defendant). This is a classic case of a willful violation of a penal code. This unambiguous exclusion applies, and therefore there is no coverage to Christensen for the claims asserted by Plaintiff in this matter.

III.    OTHER EXCLUSIONS ALSO PRECLUDES COVERAGE.

Other policy exclusions also preclude coverage in this case. However, if the Court decides WCMIC's motion on either or both of the two grounds asserted above, the remaining exclusions are immaterial.

First, WCMIC's policies preclude coverage for bodily injury "expected or intended from the standpoint of an insured." (IPFF No. 59.) This exclusion also precludes coverage in this case because Christensen, having knowingly violated criminal law in addition to his own employer's policies, expected or intended the bodily injury to occur. Christensen pled guilty and was convicted of having sexual contact with Plaintiff. (IPFF Nos. 40-47.) This sexual activity is a criminal act in Wisconsin and as a result, the bodily injury that resulted to Plaintiff was expected or intended by Christensen.

10

Second, WCMIC's policies preclude coverage for errors and omissions arising from a deliberately wrongful act or breach of duty committed by Christensen. (IPFF No. 61.) Christensen admits that when he engaged in sexual contact with Plaintiff, he knew it was wrong and in violation of Polk County's policies. (IPFF Nos. 23 and 35.) He admits that he engaged in deliberately wrongful acts. Thus, this exclusion also precludes coverage.

## CONCLUSION

Based on the foregoing, WCMIC respectfully requests the Court grant its Motion for Summary Judgment and enter declaratory judgment in favor of WCMIC declaring:

(1) There is no insurance coverage available to Christensen under the policies of insurance issued by WCMIC to Polk County for Christensen's actions as asserted by Plaintiff in this action; and

(2) WCMIC has no duty to defend or indemnify Christensen for any of the claims asserted by Plaintiff against Christensen in this action.

Dated this 10th day of June, 2016.

s/ Lori M. Lubinsky
Attorneys for Intervenor
  Wisconsin County Mutual Ins. Corporation
AXLEY BRYNELSON, LLP
P.O. Box 1767
Madison, WI 53701-1767
Telephone: (608) 257-5661
Fax: (608) 257-5444
Email: llubinsky@axley.com

\\axleyserver2\axley\EAFDATA\2961\74780\01973281.DOCX