UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

J.K.J.,

        Plaintiff,

v.

POLK COUNTY SHERIFF'S
DEPARTMENT, DARRYL L.
CHRISTENSEN,

        Defendants,

and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

        Intervenor.

Case No. 15-C-428

---

M.J.J.,

        Plaintiff,

v.

POLK COUNTY SHERIFF'S
DEPARTMENT, DARRYL L.
CHRISTENSEN,

        Defendant,

and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

        Intervenor.

Case No. 15-C-433

---

**DECLARATION OF SCOTT NARGIS**

---

WHD/12832574.1

SCOTT NARGIS declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1. I am Jail Captain of the Polk County Jail (the "Jail"). I make this declaration in support of the Polk County Sheriff's Department's Motion for Summary Judgment, and based upon my own personal knowledge of the facts attested to herein and upon my review of the business records at the Jail.

2. The Polk County Sheriff's Department is a law enforcement agency of Polk County.

3. Polk County is a municipal corporation organized under the laws of the State of Wisconsin.

4. The Jail, which is located at 1005 West Main Street in Balsam Lake, Wisconsin, is a facility operated by Polk County that houses both convicted prisoners and pretrial detainees.

5. The Jail was constructed in 2003 with the knowledge, approval, and input from the Wisconsin Department of Corrections.

6. The Jail's configuration and staffing levels comply with Wisconsin statutes and administrative code.

7. Within the Jail, there are two separate housing units, or "pods": a maximum security area, or "max pod," and a minimum security area. The max pod contains a medium security section.

8. The max pod has a central area, referred to as the "bubble," where a jailer is stationed to supervise inmates in that pod.

9. The bubble is surrounded by a hallway.

10. Surrounding the hallway are various rooms on the ground level and on an upper level, some of which hold multiple inmates, while others are medical cells or rooms with miscellaneous purposes.

11. The various cells within the max pod are segregated by sex.

12. One-way glass compromises the outside of the various rooms, such that the jailer can see inside the housing units from inside the bubble, but inmates cannot see inside the hallway or bubble unless an inmate were to stand directly in front of the one-way glass, shield their eyes, and press their face to the glass.

13. The jailer in the bubble is responsible for monitoring the inmates in the max pod and remotely opening the doors to allow access to the max pod.

14. The jailer in the bubble has the ability to open the doors entering the max pod when they are closed. Those doors may also be opened by an officer in the master control room.

15. The "X-Room" is a room located off of the hallway that surrounds the bubble in the max pod.

16. The X-Room is used by inmates for classes, exercising, or other Jail-sanctioned activities.

17. The X-Room has a bathroom connected directly to it and that bathroom is located and accessible only through the X-Room.

18. The bubble should be staffed by a jailer at all times.

19. From 2011 through 2014, the Jail had multiple policies, rules, and procedures in effect.

20. Upon beginning their employment, all jailers receive a copy of the Jail's Policy and Procedures Manual (the "Jail Manual").

21. All jailers are expected to read and understand the Jail Manual.

22. Attached hereto and marked as **Exhibit A** is a true and correct copy of Section 21 C-200 of the Jail Manual, which was in effect from 2011 through 2014.

23. Attached hereto and marked as **Exhibit B** are true and correct copies of Section 21 C-202 of the Jail Manual, which were in effect starting November 18, 2007, and periodically revised through 2014.

24. Section 21 C-202 was revised in 2012 to add information relevant to the Prison Rape Elimination Act ("PREA").

25. Attached hereto and marked as **Exhibit C** is a true and correct copy of Section 21 C-203 of the Jail Manual, which was in effect from 2011 through 2014.

26. Attached hereto and marked as **Exhibit D** is a true and correct copy of Section I-100 of the Jail Manual, which was in effect starting February 3, 2003, through 2014, and periodically revised from time to time in between.

27. Attached hereto and marked as **Exhibit E** is a true and correct copy of Section I-200 of the Jail Manual, which was in effect from 2011 through 2014.

28. Upon booking of each inmate, the Jail provides a handbook to each inmate (the "Inmate Handbook") that outlines, among other things, the grievance policy and procedure of the Jail.

29. Attached hereto and marked as **Exhibit F** is a true and correct copy of the Inmate Handbook regarding the Jail's inmate grievance procedure.

30. Polk County jailers are required to be certified as corrections officers by the State of Wisconsin Department of Justice Law Enforcement Standards Board pursuant to training and qualification standards established by the State.

31.     As part of their training, Polk County jailers are instructed that inappropriate and sexual contact with inmates is unprofessional and in violation of the Wisconsin Statutes.

32.     Polk County jailers receive continual training on Jail policies and procedures.

33.     Polk County has provided training to jailers on sexual deviancy and its relation to inmates.

34.     Polk County jailers receive training regarding inmate supervision techniques.

35.     At a meeting with Polk County jailers on February 20, 2014, I discussed the basics of PREA. In particular, I discussed that the Jail and PREA do not allow or condone inappropriate contact between inmates, or between staff and inmates. In addition, I stated that if someone, either an inmate or staff member, presents a concern about inappropriate contact, it should be reported to me.

36.     Attached hereto and marked as **Exhibit G** is a true and correct copy of an email I sent to Jail staff on February 21, 2014, recapping the training from the day before.

37.     All Polk Count jailers are under my supervision while working at the Jail.

38.     From 2011 to 2014, formal discipline would be considered and may be imposed to correct Jail employee behavior which violated Sheriff's Department policies.

39.     From 2011 to 2014, the types of discipline which might be issued to a Jail employee included a verbal reprimand, written reprimand, an official reprimand, suspension without pay, demotion, and termination.

40.     From 2011 to 2014, Jail employees were periodically evaluated and reviewed.

41.     From 2011 to 2014, if a Jail supervisor determined than an employee had not complied with Jail policies or procedures, that supervisor evaluated whether the violation

warranted any discipline or retraining, and the employee would have been informed of the violation, and may have been retrained on the policy or procedure or formally disciplined.

42. The Jail does not allow posters on walls because of the potential to hide contraband behind the posters.

43. Polk County jailers are not instructed to announce their entrance into a room housing an inmate because, based on my experience, it is not a sound corrections practice. This practice would give inmates warning of officer inspections that are intended to be unscheduled.

44. Employing additional female jailers at the Jail, so that every shift would have at least one male jailer and one female jailer in the bubble, would cost up to $600,000 in additional salary and benefits, not including the cost of training.

45. Polk County's investigation into Christensen's sexual assault began when a former Jail inmate reported her sexual encounters with Christensen while she was in another jail.

46. After the allegations were communicated to the Polk County Sheriff, Polk County's Chief Deputy Sheriff began an immediate internal investigation of Christensen.

47. On October 30, 2014, Christensen was interviewed by the Chief Deputy concerning the allegations and investigation.

48. Only one other instance of inappropriate contact with an inmate, other than Christensen, was ever reported at the Jail, and after investigation the alleged physical contact was found to be without evidence.

Dated this 1st day of July, 2016.

s/ *[signature]*
Scott Nargis