UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

J.K.J.,

        Plaintiff,

vs.

POLK COUNTY SHERIFF'S DEPARTMENT,
and DARRYL L. CHRISTENSEN,

        Defendants,

   and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

   Intervenor.

Case No. 15-C-428

---

M.J.J.,

        Plaintiff,

v.

POLK COUNTY SHERIFF'S DEPARTMENT,
DARRYL L. CHRISTENSEN,

        Defendants,

   and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

   Intervenor.

Case No. 15-C-433

---

**DEFENDANT POLK COUNTY SHERIFF'S
DEPARTMENT'S PROPOSED FINDINGS OF FACT**

---

      Defendant Polk County Sheriff's Department ("Polk County"), by its undersigned counsel, submits, pursuant to Federal Rule of Civil Procedure 56, the following Proposed

Findings of Fact in Support of its Motion for Summary Judgment in both Case No. 15-C-428 and Case No. 15-C-433.

## I. JURISDICTION AND VENUE.

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1367(a). (Case No. 15-C-428, ECF No. 41 ("J.K.J.'s Second Am. Compl."), ¶¶ 1–2; Case No. 15-C-433, ECF No. 42 ("M.J.J.'s Second Am. Compl."), ¶¶ 1–2.)

2. Venue is proper in this district under 28 U.S.C. § 1391(b)(2). (*See* J.K.J.'s Second Am. Compl. ¶ 7; M.J.J.'s Second Am. Compl. ¶ 7.)

## II. THE PARTIES.

3. Plaintiff M.J.J. is an adult resident of the State of Wisconsin. (Case No. 15-c-428, ECF No. 45 at 11:2-3; Case No. 15-c-422, ECF No. 48 at 11:2-3.) From time to time from November 2011 to January 2014, M.J.J. was incarcerated in the Polk County Jail. (Case No. 15-c-428, ECF No. 53 at 6; Case No. 15-c-433, ECF No. 54 at 6.)

4. Plaintiff J.K.J (collectively with M.J.J. "Plaintiffs") is an adult resident of the State of Wisconsin (Case No. 15-c-428, ECF No. 46 at 24:1-3; Case No. 15-c-433, ECF No. 47 at 24:1-3.) From time to time from July 2012 to 2014, J.K.J. was incarcerated in the Polk County Jail. (*Id*. at 6:9-12 & 44:10-18.)

5. Defendant Darryl L. Christensen ("Christensen") is an adult resident of the State of Wisconsin and was, at times material to this action, employed as a jailer with Polk County Jail. (Case No. 15-c-428, ECF No. 47 at 6:17-19; Case No. 15-c-433, ECF No. 46 at 6:17-19.)

6. Christensen currently resides as a convicted prisoner at Dodge Correctional Facility located at 216 West Center Street, Juneau, Wisconsin, 53039. (*Id*. at 57:11-19.)

7. Defendant Polk County Sheriff's Department is a law enforcement agency of Polk County. (Declaration of Scott Nargis ("Nargis Decl.") ¶ 2.)

8. Polk County is a municipal corporation organized under the laws of the State of Wisconsin. (*Id.* ¶ 3.)

9. Intervenor Wisconsin Counties Mutual Insurance Company is a domestic insurance corporation authorized and licensed to do business in the State of Wisconsin located at 18550 West Capitol Drive, Brookfield, Wisconsin 53042 that issued an insurance policy to Polk County for the time periods at issue in this lawsuit subject to the terms, conditions, and exclusions of the policy. (Case No. 15-cv-428, ECF No. 18, ¶¶ 1 & 5; ECF No. 20, 2.; Case No. 15-cv-433, ECF No. 18, ¶¶ 1 & 5; ECF No. 20, 2.)

### III. THE POLK COUNTY JAIL.

10. The Polk County Jail, which is located at 1005 West Main Street in Balsam Lake Wisconsin, is a facility operated by Polk County that houses both convicted prisoners and pretrial detainees. (Nargis Decl. ¶ 4.)

11. Polk County Jail was constructed in 2003. (Case No. 15-c-428, ECF No. 47 at 66:22-25 & 67:1; Case No. 15-c-433, ECF No. 46 at 66:22-25 & 67:1.)

12. The construction of Polk County Jail was done with knowledge, approval, and input from the Wisconsin Department of Corrections. (Nargis Decl. ¶ 5.)

13. The Polk County Jail's configuration and staffing levels comply with Wisconsin statutes and administrative code. (*Id.* ¶ 6.)

14. Within the Polk County Jail, there are two separate housing areas or pods: a minimum security area and a maximum security area or "max pod". The max pod contains a medium security section. (*Id.* ¶ 7.)

15. Cameras were not added to the max pod due to budgetary concerns, the difficulty in storing the camera footage, and the staffing of the maximum security area with a jailer at all times. (Case No. 15-c-428, ECF No. 49 at 55:16-56:10; Case No. 15-c-433, ECF No. 50 at 55:16-56:10. & Case No. 15-c-428, ECF No. 52 at 32:1-10; Case No. 15-c-433, ECF No. 53 at 32:1-10.)

16. The max pod has a central area, referred to as the "bubble," where a jailer is stationed to supervise inmates in that pod. (Nargis Decl. ¶ 8)

17. The bubble is surrounded by a hallway. (*Id.* ¶ 9.)

18. Surrounding the hallway are various rooms on the ground level and on an upper level, some of which hold multiple inmates, while others are medical calls or rooms with miscellaneous purposes. (*Id.* ¶ 10.)

19. The various cells within the max pod are segregated by sex. (*Id.* ¶ 11.)

20. One-way glass comprises the outside of the various rooms, such that jailers can see inside the housing units from the bubble, but inmates cannot see inside the hallway or bubble unless an inmate were to stand directly in front of the one-way glass, shield their eyes, and press their face to the glass. (Case No. 15-c-428, ECF No. 46 at 77:19-22 and 79:23-80:10; Case No. 15-c-433, ECF No. 47 at 77:19-22 and 79:23-80:10; Case No. 15-c-428, ECF No. 47 at 67:2-18; Case No. 15-c-433, ECF No. 46 at 67:2-18; Nargis Decl. ¶ 12.)

21. The jailer staffed inside the bubble has the ability to remotely open the doors to allow access to the max pod. (Nargis Decl. ¶ 13.)

22. If the doors entering the max pod are not open, a jailer cannot enter the max pod without being let in by someone inside the bubble or by an officer in the master control room. (*Id.* ¶ 14.)

23. The "X-Room" is a room located off of the hallway that surrounds the bubble in the max pod. (*Id.* ¶ 15.)

24. The X-Room is used by inmates for classes, exercising or other Jail-sanctioned activities. (*Id.* ¶ 16; Case No. 15-c-428, ECF No. 45 at 70:20-25; Case No. 15-c-433, ECF No. 48 at 70:20-25.)

25. The X-Room has a bathroom connected directly to it, and that bathroom is locked and accessible only through the X-Room. (Case No. 15-c-428, ECF No. 45 at 84:2-3; Case No. 15-c-433, ECF No. 48 at 84:2-3; Nargis Decl. ¶ 17.)

26. The bubble should be staffed by a jailer at all times. (*Id.* ¶ 18.)

27. The Polk County Jail had multiple policies, rules, and procedures in effect during Plaintiffs' multiple incarcerations and employment of Christensen. (*Id.* ¶ 19.)

28. All jailers received a copy of Polk County Jail's Policy and Procedures Manual (the "Jail Manual") upon beginning their employment. (*Id.* ¶ 20; Case No. 15-c-428, ECF No. 47 at 14:3-6; Case No. 15-c-433, ECF No. 46 at 14:3-6.)

29. Polk County jailers are expected to read and understand the Jail Manual. (Nargis Decl. ¶ 21.)

30. Jail Manual Section 21 C-200 provides that male and female officers will supervise and manage all inmates regardless of gender, with the exception of pat down searches and strip searches. (Nargis Decl. ¶ 22, Ex. A at 2.)

31. Jail Manual Section 21 C-202 "Fraternization with Inmates/PREA" prohibits jailers from engaging in inappropriate actions with inmates and advised officers of PREA's ("Prisoner Rape Elimination Act") prohibition on sexual and/or inappropriate contact between

5

jailers and inmates. (*Id*. ¶ 23, Ex. B; Case No. 15-c-428, ECF No. 48 at 74:24-75:5; Case No. 15-c-433, ECF No. 49 at 74:24-75:5.)

32. Section 21 C-202 was revised in 2012 to add the PREA information. (Nargis Decl. ¶ 24.)

33. Specifically, 21 C-202 states that "In addition to Department policies against sexual misconduct, Wisconsin State Statutes make it a criminal offense for correctional staff members to have sexual intercourse or contact with an individual confined in a correctional institution." (*Id*. ¶ 23, Ex. B at 7.)

34. Jail Manual Section 21 C-203 prohibited inappropriate fraternization between staff. (*Id*. ¶ 25, Ex. C; Case No. 15-c-428, ECF No. 48 at 82:1-6; Case No. 15-c-433, ECF No. 49 at 82:1-6.)

35. Jail Manual Section I-200 provides a grievance policy for inmates, and was to be used, among other things, for inmate grievances related to sexual assault or harassment. (Nargis Decl. ¶ 26, Ex. D.)

36. Specifically, I-200 states that "inmates be provided a grievance procedure as an administrative means for the expression and resolution of issues relating to personal health and welfare of inmates, or the operations and services for the facility." (*Id*. at 1.)

37. I-200 also states that "Inmates may pursue grievances without fear of reprisal or punitive action." (*Id*.)

38. Jail Manual Section I-100 "Inmate Rights" provided that inmates have a right to, among other things, access to courts, access to legal materials, access to a grievance procedure, protection from harm and freedom from sexual harassment by jail staff. (*Id*. ¶ 27, Ex. E.)

6

39. Upon booking of each inmate, Polk County Jail provided a handbook to each inmate outlining, among other things, the grievance policy and procedures of the jail. (*Id*. ¶ 28; Case No. 15-c-428, ECF No. 48 at 99:23-25 & 100:3-4; Case No. 15-c-433, ECF No. 49 at 99:23-25 & 100:3-4.)

40. Upon being hired, Polk County jailers are required to be certified as corrections officers by the State of Wisconsin Department of Justice Law Enforcement Standards Board pursuant to training and qualification standards established by the State. (Nargis Decl. ¶ 30.)

41. As part of their training, all Polk County jailers are instructed that inappropriate and sexual contact with inmates is unprofessional and in violation of the Wisconsin Statutes. (*Id*. ¶ 31)

42. Polk County Jail provides training to all jailers on PREA, including training with regard to avoiding fraternization and sexual contact with inmates. (*Id*. ¶¶ 35-36.)

43. All jailers with the Polk County Jail receive continual training on Polk County Jail policies and procedures. (*Id*. ¶ 32.)

44. Polk County Jail Captain Nargis discussed the impact of PREA with jailers on February 20, 2014. (*Id*. ¶ 35; Case No. 15-c-428, ECF No. 48 at 41:5-13; Case No. 15-c-433, ECF No. 49 at 41:5-13; Case No. 15-c-428, ECF No. 50 at 8:11-10:10 & 38:25-39:2; Case No. 15-c-433, ECF No. 51 at 8:11-10:10 & 38:25-39:2.)

45. Specifically regarding PREA, Jail Captain Nargis conveyed that Polk County Jail does not allow or condone inappropriate contact between inmates, or staff and inmates, and that all concerns about such topics should be directed to himself. (Nargis Decl. ¶¶ 35-36, Ex. G.)

46. On February 21, 2014, Jail Captain Nargis send an email summarizing these points to jailers, including Christensen, who missed the meeting the previous day. (*Id*.)

47. Polk County has provided training to jailers regarding sexual deviancy and its relation to inmates. (*Id.* ¶ 33.)

48. Training regarding inmate supervision techniques is provided to all Polk County jailers. (*Id.* ¶ 34.)

49. The Jail policy against fraternization with inmates is "designed to reduce potential conflict of interest or impairment of the supervision and incarceration provided by the Polk County Jail for prisoners in the custody of the Polk County Sheriff's Office." (*Id.* ¶ 23, Ex. B at 1.)

50. All Jailers, including Christensen, are under the supervision of Jail Captain Nargis while on duty at Polk County Jail. (*Id.* ¶ 37; Case No. 15-c-428, ECF No. 48 at 52:8-15; Case No. 15-c-433, ECF No. 49 at 52:8-15.)

51. From 2011 to 2014, the types of discipline which might be issued to a Polk County Jail employee included a written reprimand, an official reprimand, suspension without pay, demotion, and termination. (Nargis Decl. ¶ 39.)

52. From 2011 to 2014, Polk County Jail employees were periodically evaluated and reviewed. (*Id.* ¶ 40.)

53. From 2011 to 2014, if a Polk County Jail supervisor determined that an employee had not complied with policies or procedures, that supervisor evaluated whether the violation warranted any discipline or retraining, and the employee would have been informed of the violation, and may have been retrained on the policy or procedure or formally disciplined. (*Id.* ¶ 41.)

54. Polk County has not implemented policies enacting every provision of PREA because, among other reasons, the County has determined that certain provisions of PREA are

not appropriate correctional practices for the Polk County Jail. (*Id*. ¶ 43.) For example, PREA advises that an officer should always announce his or her presence before entering the inmates' living unit. This practice would give inmates warning of officer inspections that are intended to be unscheduled. (Case No. 15-c-428, ECF No. 48 at 51:10-52:7; Case No. 15-c-433, ECF No. 49 at 51:10-52:7.)

55. Additionally, Polk County Jail does not allow posters on walls because of the potential to hide contraband behind the posters. (Nargis Decl. ¶ 42; Case No. 15-c-428, ECF No. 48 at 107:18-108:4; Case No. 15-c-433, ECF No. 49 at 107:18-108:4.)

56. Employing additional female jailers at the Polk County Jail, so that every shift would have at least one male jailer and one female jailer in the bubble, would cost up to $600,000 in additional salary and benefits, not including the cost of training. (Nargis Decl. ¶ 44.)

57. Only one other instance of inappropriate contact with an inmate, other than Christensen, was ever reported at the Jail, and after investigation the alleged physical contact was found to be without evidence. (*Id*. ¶ 48; Case No. 15-c-428, ECF No. 48 at 68:16-70:2; Case No. 15-c-433, ECF No. 49 at 68:16-70:2.)

### IV. FORMER JAILER CHRISTENSEN.

58. Christensen was employed as a jailer with the Polk County Jail from July 1995 until October 2014. (Case No. 15-c-428, ECF No. 47 at 6:17-22 & 8:3-5; Case No. 15-c-433, ECF No. 46 at 6:17-22 & 8:3-5.)

59. In 2000, Christensen was promoted briefly to Sergeant until 2002, when he voluntarily resigned from the promoted position back to the jailer position. (*Id*. at 78:13-17.)

60. In addition to his position as a jailer at Polk County Jail, Christensen was also briefly employed as a Safety Officer. (*Id*. at 6:17-22.)

61. Before and during the span of his sexual encounters with Plaintiffs, Christensen also worked for the Amery Fire Department. (*Id*. at 23:5-11.)

62. In 2010, Christensen was promoted to Fire Chief of the Amery Fire Department. (*Id*. at 24:3-12.)

63. At all times during his employment with Polk County, Christensen was a Certified Jail Officer by the Wisconsin Law Enforcement Standards Board. (*Id*. at 8:15-9:4.)

64. Christensen was recertified for this position every two years. (Case No. 15-c-428, ECF No. 47 at 9:2-4; Case No. 15-c-433, ECF No. 46 at 9:2-4.)

65. While obtaining his initial certification to become a Certified Jail Officer, Christensen received training from a college professor related to sexual interactions with inmates. (*Id*. ¶ at 12:4-18.)

66. Christensen was "repeatedly trained" not to have sexual encounters with inmates**.** (*Id*. ¶ at 73:22-23.)

67. Christensen knew that it was unlawful to have sexual interactions with inmates before he became a Certified Jail Officer. (*Id*. at 12:19-22.)

68. In addition to the training Christensen received to become a Certified Jail Officer at Polk County Jail, Christensen was also provided a copy of the Jail Manual upon beginning his employment. (*Id*. at 14:3-6.)

69. Christensen was required to, and did read, the Jail Manual in its entirety. (*Id*. at 14:7-10.)

70. Before engaging in inappropriate contact with Plaintiffs, Christensen was familiar with Polk County Jail's policy prohibiting sexual contact with inmates. (*Id*. at 15:24-25 & 16:1-18.)

71. Before engaging in inappropriate contact with Plaintiffs, Christensen was familiar with Polk County Jail's policy regarding "Fraternization with Inmates" and the subsequent 2012 "Fraternization with Inmates/PREA" policy. (*Id*. at 18:11-14 & 19:7-11.)

72. Before engaging in inappropriate contact with Plaintiffs, Christensen was aware that "there was a law that prohibited correctional officers from having sexual contact with inmates." (*Id*. at 17:19-23 & 18:15-19.)

73. Christensen was aware that Polk County Jail had a policy that provided as follows: "Under no circumstances will any inmate be the object of verbal, physical, emotional, psychological or sexual harassment by facility staff. Any officer engaged in such actions is subject to disciplinary charges and/or termination." (*Id*. at 16:6-18.)

74. Christensen was required to read a portion of the Jail Manual on each shift. (*Id*. at 82:19-24.)

75. Christensen knew it was a crime to have sexual encounters with inmates. (*Id*. at 73:24-25 & 74:1-8.)

76. Prior to these sexual misconduct cases, only one other instance of sexual harassment by Christensen was reported in Polk County Jail, and it was promptly investigated and determined to be without foundation. (Case No. 15-c-428, ECF No. 48 at 55:17-58:16; Case No. 15-c-433, ECF No. 49 at 55:17-58:16.)

77. Christensen was cited once for insubordination. (Case No. 15-c-428, ECF No. 47 at 114:1-5; Case No. 15-c-433, ECF No. 46 at 114:1-5.)

78. Christensen was cited once for excessive use of force. (*Id*. at 117:24-119:13.)

79. Until the allegations of sexual misconduct, the Polk County Jail Captain Nargis never questioned Christensen's honesty. (Case No. 15-c-428, ECF No. 48 at 54:19-20; Case No. 15-c-433, ECF No. 49 at 54:19-20.)

80. Christensen knows and admits that he was not acting within the scope of his employment when engaging in the sexual acts with Plaintiffs. (Case No. 15-c-428, ECF No. 47 at 58:23-25 & 59:1-13; Case No. 15-c-433, ECF No. 46 at 58:23-25 & 59:1-13.)

81. When Christensen engaged in sexual misconduct with Plaintiffs, he did so for the sole purpose of his own personal gratification. (*Id*. at 59:6-10.)

82. Christensen's sexual misconduct with Plaintiffs did not serve Polk County's interests. (*Id*. at 59:11-13.)

83. Christensen was generally well liked by his Polk County Jail coworkers and was known to have a good rapport with the inmates. (Case No. 15-c-428, ECF No. 48 at 54:4-6; Case No. 15-c-433, ECF No. 49 at 54:4-6.)

84. No employee, staff member, or jailer at Polk County Jail was aware of Christensen's sexual encounters with Plaintiffs. (Case No. 15-c-428, ECF No. 50 at 17:20-18:5; Case No. 15-c-433, ECF No. 51 at 17:20-18:5; Case No. 15-c-428, ECF No. 51 at 23:25-24:6; Case No. 15-c-433, ECF No. 52 at 23:25-24:6.)

85. When Polk County's Jail Captain Nargis discovered Christensen's sexual assault, he was shocked because "[i]t did not fall in line with anything [he] knew of Darryl Christensen to be or support or stand for." (Case No. 15-c-428, ECF No. 48 at 105:21-23; Case No. 15-c-433, ECF No. 49 at 105:21-23.)

86. The Jail Captain of Polk County Jail never witnessed Christensen treating Plaintiffs differently than other inmates. (*Id*. at 110:5-12.)

## V. M.J.J.'S SEXUAL CONTACT WITH CHRISTENSEN.

87. M.J.J. was incarcerated in the Polk County Jail nine different times between November 3, 2011 and January 22, 2014. (Case No. 15-c-428, ECF No. 47 at 31:22-32:5; Case No. 15-c-433, ECF No. 46 at 31:22-32:5.)

88. While incarcerated in the Polk County Jail, Christensen engaged in numerous inappropriate sexual contacts with M.J.J. (Case No. 15-c-428, ECF No. 45 at 84:10-12 & 87:7-20; & 90:22-91:3; Case No. 15-c-433, ECF No. 48 at 84:10-12 & 87:7-20; & 90:22-91:3.)

89. Christensen's sexual acts with M.J.J. began with inappropriate sexual comments that eventually lead to physical sexual contact. (*Id*. at 64:1-4 & 67:1-9.)

90. Christensen engaged in oral sex with M.J.J. (*Id*. at 87:17-19.)

91. Christensen engaged in sexual acts and sexual intercourse with M.J.J. in the booking room, X Room, X Room bathroom, and bubble. (*Id*. at 81:25-82:3; 83:19-84:1; & 90:22-91:3.)

92. M.J.J. did not report her sexual encounters with Christensen to anyone employed at Polk County Jail. (*Id*. at 46:7-9; 53:11-14.)

93. Christensen repeatedly asked whether M.J.J. was going to report their encounters, and she assured him that she would not tell anyone, including other prisoners. (*Id*. at 46:1-6; 53:18-25; & 54:1-3.)

94. Until Christensen was told of M.J.J.'s sexual assault allegations, he did not think that anyone at Polk County Jail knew of his sexual encounters with M.J.J. (Case No. 15-c-428, ECF No. 48 at 58:7-14; Case No. 15-c-433, ECF No. 49 at 58:7-14.)

## VI. J.K.J.'s SEXUAL INTERACTIONS WITH CHRISTENSEN.

95. J.K.J. was incarcerated in the Polk County Jail various times between 2012 and 2014. (Case No. 15-c-428, ECF No. 47 at 44:3-8; Case No. 15-c-433, ECF No. 46 at 44:3-8.)

96. Christensen's sexual advances towards J.K.J. began in 2012. (Case No. 15-c-428, ECF No. 46 at 44:10-13; Case No. 15-c-433, ECF No. 47 at 44:10-13.)

97. The majority of Christensen's sexual encounters with J.K.J occurred in the X Room and bubble. (*Id*. at 80:19-81:11.)

98. Christensen engaged in oral sex with J.K.J. (*Id*. at 81:4-11.)

99. Christensen engaged in sexual intercourse with J.K.J. (*Id*. at 80:19-22.)

100. Christensen told J.K.J. on numerous occasions not to tell anyone of their sexual encounters. (*Id*. at 81:16-21.)

101. J.K.J. did not report Christensen's sexual interactions with her, because she did not want him to get into trouble. (*Id*. at 54:21-25 & 56:15-17.)

102. No Polk County Jail inmate saw Christensen engage in his sexual acts with J.K.J. throughout the duration of the sexual encounters. (*Id*. at 80:16-18.)

103. While not incarcerated at Polk County Jail, J.K.J. voluntarily went to the Amery Fire Department on three separate occasions to meet up with Christensen. (*Id*. at 67:8-14.)

104. J.K.J. and Christensen engaged in sexual intercourse on her first and third visits to the fire department. (*Id*. at 68:18-24; 70:15-17; & 71-75:21-17.)

### VII.  POLK COUNTY JAIL INVESTIGATION AND CHRISTENSEN'S RESIGNATION/CONVICTION.

105. Polk County's investigation into Christensen's sexual assault began when a former jail inmate reported her sexual encounters with Christensen while she was in another jail. (Nargis Decl. ¶ 45.)

106. After the allegations were communicated to the Polk County Sheriff, Polk County's Chief Deputy Sheriff began an immediate internal investigation of Christensen. (*Id*. ¶ 46.)

107. On October 30, 2014, Christensen was interviewed by the Chief Deputy concerning the allegations and investigation. (*Id*. ¶ 47.)

108. Directly after the interview, Christensen resigned from his position as a jailer at Polk County Jail. (Case No. 15-c-428, ECF No. 52 at 24:18-25; Case No. 15-c-433, ECF No. 53 at 24:18-25.)

109. After the Polk County investigation and a criminal prosecution, Christensen was ultimately convicted of several counts of sexual assault and sentenced to 30 years in prison. (Case No. 15-c-428, ECF No. 47 at 57:4-19; Case No. 15-c-433, ECF No. 46 at 57:4-19.)

## VIII. PLAINTIFFS' SECOND AMENDED COMPLAINTS.

110. Plaintiffs' filed their Second Amended Complaints seeking damages for Polk County's alleged violations of 42 U.S.C. §§ 1983, 1986, and 1988, the Eighth Amendment, the Fourteenth Amendment, in addition to various state law claims. (J.K.J. Second Am. Compl., ¶¶ 86–133, 151–57, 162–74; M.J.J. Second Am. Compl., ¶¶ 76–123, 141–147, 152–64.)

111. Specifically, Plaintiffs allege that Polk County had a policy, custom, or practice that violated their constitutional right to be free from cruel and unusual punishment. (J.K.J. Second Am. Compl., ¶¶ 86–133; M.J.J. Second Am. Compl., ¶¶ 76–123.). In addition, Plaintiffs allege that Polk County negligently supervised and trained Christensen and other Polk County jailers and negligently inflicted emotional distress upon them.) (J.K.J. Second Am. Compl., ¶¶ 151–57, 162–74; M.J.J. Second Am. Compl., ¶¶ 141–147, 152–64.)

112. Polk County denies all of Plaintiffs' claims in their entirety. (Case No. 15-C-428, ECF No. 29; Case No. 15-C-433, ECF No. 30.)

Dated this 1st day of July, 2016.

        s/ *Paul D. Cranley*
        Charles H. Bohl
        Paul D. Cranley
        Kurt M. Simatic

        WHYTE HIRSCHBOECK DUDEK S.C.
        555 East Wells Street, Suite 1900
        Milwaukee, Wisconsin 53202-3819
        Telephone:  414-273-2100
        Fax:  414-223-5000
        Email: cbohl@whdlaw.com

        33 East Main Street, Suite 300
        Madison, WI 53701-1379
        Telephone: 608-255-4440
        Fax: 608-258-7138
        pcranley@whdlaw.com

        20800 Swenson Drive, Suite 300
        Waukesha, Wisconsin 53186
        Telephone: 262-956-6200
        Fax: 262-956-6210
        Email: ksimatic@whdlaw.com

        Attorneys for Polk County Sheriff's Department

WHD/12848132.2