IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

M.J.J.,

        Plaintiff,　　　　　　　　　　　Civil Action No. 15-cv-433-wmc

v.

POLK COUNTY SHERIFF'S DEPARTMENT
AND DARRYL L. CHRISTENSEN,

        Defendants,

and

WISCONSIN COUNTY MUTUAL INSURANCE
CORPORATION,

        Intervenor.

## PLAINTIFF'S RESPONSE TO INTERVENOR WISCONSIN MUTUAL INSURANCE CORPORATION'S PROPOSED FINDINGS OF FACT

1. Plaintiff M.J.J. ("Plaintiff") is an adult resident of the State of Wisconsin. (Dkt. 1, Compl. ¶ 4.)

**RESPONSE:** Admit.

2. Defendant Darryl L. Christensen ("Christensen") was, at times material to this action, employed as a jailer wither the Polk County. (*Id.* at ¶ 5.)

**RESPONSE:** Admit.

3. M.J.J. was incarcerated in Polk County Jail nine different times between November 3, 2011 and January 22, 2104 (*Id.* at ¶¶ 6.)

**RESPONSE:** Admit.

4. M.J.J. alleges that while she was incarcerated in the Polk County Jail, Christensen engaged in numerous instances of sexual contact with her including kissing her, inserting his finger into her vagina, having her perform oral sex on him, and having sexual intercourse with her. (*Id.* at ¶¶ 6-9.)

**RESPONSE:** Admit.

5.  More specifically, M.J.J. alleges that Christensen began by making flattering statements to her of sexual nature. (Dkt. 32, Lubinsky Aff. Exh. 1, M.J.J. Dep. At 67:1-15.)

**RESPONSE:** Dispute to the extent that the use of the word "flattering" makes the inference that the comments were appreciated. As to the sexual contact between MJJ and Defendant Christensen, MJJ stated: "It started off as just like sexual comments." (Dkt. 45, MJJ Dep. at 64:1-7.) After making this statement, Attorney Lubinski re-characterized the comments as "flattering statements;" these were not MJJ's words. (Dkt. 47, M.J.J. Dep. at 67:1-15.) It is agreed that prior to sexual contact, Christensen began by making sexual comments.

6.  M.J.J. alleges that the flattering remarks led to physical sexual contact. (*Id.*)

**RESPONSE:** Dispute to the extent that the use of the word "flattering" makes the inference that the comments were somehow appreciated. As to the sexual contact between MJJ and Defendant Christensen, MJJ stated: "It started off as just like sexual comments." (Dkt. 45, MJJ Dep. at 64:1-7.) After making this statement, Attorney Lubinski re-characterized the comments as "flattering statements;" these were not MJJ's words. (Dkt. 47, M.J.J. Dep. at 67:1-15.). It is agreed that the comments led to physical sexual contact.

7.  M.J.J. alleges that she had sexual intercourse with Christensen in a booking room, in a room called the "X Room," and in the bathroom of the X-Room, all of which were located in the Polk County jail. (*Id.* 83-84: 19-1.)

**RESPONSE:** Admit.

8.  M.J.J. alleges that she touched herself in a sexual manner at Christensen's request on 20 or more occasions, and she performed oral sex on Christensen about six times in the X-Room. (*Id.* at 87: 2-19.)

**RESPONSE:** Deny. M.J.J. alleged that Christensen asked her over the intercom to touch herself 20 times. (Dkt. 47, M.J.J. Dep. at 87:7-10.) M.J.J. never indicates that she did, in fact, touch herself. Admit that M.J.J. indicates that she performed oral sex on Christensen about six times in the X-Room. *Id.*

9.  M.J.J. alleges that she had sexual contact, including sexual intercourse and oral sex, with Christensen on 50 or more occasions in an area of a hallway near the pod, the X Room, and the bubble in the Polk County jail. (*Id.* at 89-91: 9-3.)

**RESPONSE:** Admit.

10. M.J.J. alleges that on one occasion, Christensen asked her and another prisoner to play cards with their tops off, and they complied with his request. (*Id.* at 88-89: 17-8.)

2

**RESPONSE:** Admit.

11. While the sexual contact with Christensen was ongoing, M.J.J. did not report Christensen's conduct to anyone employed by Polk County. (*Id.* at 46:7-9; *Id.* at 53:11-14.)

**RESPONSE:** Admit.

12. In fact, M.J.J. cooperated with Christensen to keep their sexual contact a secret. (*Id.* at 53:15-17)

**RESPONSE:** Dispute M.J.J. did not "cooperate" with Christensen, she was compelled to keep the secret. "Cooperation" was a term used by Attorney Bohl, not M.J.J. with the statement made by attorney Bohl. M.J.J. states and explains that she did not tell anyone about the sexual contact because she did not believe they would believe her over somebody in a position of power. (Dkt 48, MJJ Dep. 18:10-12; 46:12-19; and 54:13-18.) MJJ also indicated that she was afraid of repercussions. (*Id.* at 45:22-46:13.) Finally, MJJ indicated that Christensen "made it apparent that I would get in trouble." (*Id.* at at 104:10-14). Notwithstanding, Plaintiff admits that she did keep the sexual contact a secret while it was happening.

13. M.J.J. cooperated with Christensen in only having sex in places where she thought there were no cameras. (*Id.* at 53: 18-21.)

**RESPONSE:** Dispute. Again, M.J.J. did not use the term "cooperate" this was a term from Attorney Bohl. Attorney Bohl stated, "you cooperated with Darryl Christian [sic.] in only having sex in places where you thought there were no cameras; right?" M.J.J.'s response was "pretty much." (Dkt. 48, MJJ Dep. at 53: 18-21.)

14. M.J.J. also kept the fact that she was having sex with Christensen a secret from other prisoners. (*Id.* at 53-54: 22-3.)

**RESPONSE:** Admit that she did not tell any other prisoners. Dispute to the extent that it assumes that no other prisoners knew about the sexual contact. M.J.J. indicated that she believed that other inmates knew of the sexual conduct because of the behaviors exhibited by Defendant Christensen. (Dkt. 48, MJJ Dep. at 67:21-70:2.)

15. Christensen would ask M.J.J. from time to time whether she was going to tell anyone, and she responded to him that she would not tell anyone. (*Id.* at 46: 1-6.)

**RESPONSE:** Admit.

16. Christensen told M.J.J. that if their sexual relationship became known to others, he would lose his wife, children and tenure with his job. (*Id.* at 108: 12-18.)

**RESPONSE:** Admit.

3

17. Christensen began his employment as a corrections officer with Polk County on June 30, 1996. (Dkt. 32, Lubinsky Aff. Exh. 2, Christensen Dep. At 6: 17-22.)

**RESPONSE:** Admit.

18. Christensen's last day of employment with Polk County was on October 30, 2014. (*Id.* at 8:3-5.)

**RESPONSE:** Admit.

19. When Christensen began his employment with Polk County, he was certified by the Wisconsin Law Enforcement Standards Board as being qualified to be a jail officer. (*Id.* at 8:11-24; Dkt. 32, Lubinsky Aff. Exh. 4.)

**RESPONSE:** Admit.

20. As part of his initial certification, Christensen received training that it was unlawful for jail officers to have sexual contact with inmates. (Dkt. 32, Lubinsky Aff. Exh. 2, Christensen Dep. at 12:19-22.)

**RESPONSE:** Admit.

21. When Christensen began employment with Polk County, he received a copy of the policy and procedural manual for the jail. (*Id.* at 12:3-6.)

**RESPONSE:** Admit as to the fact although the citation is incorrect.

22. Christensen was aware that Polk County had a policy that provided as follows: "Under no circumstances will any inmate be the object of verbal, physical, emotional, psychological or sexual harassment by facility staff. Any officer engaged in such actions is subject to disciplinary charges and/or termination." (*Id.* at16:6-19.)

**RESPONSE:** Admit.

23. Christensen was aware that Polk County had a policy that provided as follows: "In addition to department policies against sexual misconduct, Wisconsin State Statutes make it a criminal offense for correctional staff members to have sexual intercourse or contract with an individual confined in a correctional institution." (*Id.* at 17-18:19-14.)

**RESPONSE:** Admit.

24. Christensen knew that Wisconsin criminal statutes prohibit a correctional officer to have sexual intercourse or sexual contact with inmates. (*Id.* at 18:15-19.)

**RESPONSE:** Deny to the extent that Christensen may have believed that inmates were able to consent. Christensen indicated that he was not aware that inmates were not able to

4

consent to sexual contact. (Dkt. 46, Christensen Dep. 140:12-19; 141:24-142:12.) In all other respects, admit.

25. Christensen's job with Polk County in no way, shape or form involved sexual contact with inmates. (Dkt. 32, Lubinsky Aff. Exh. 3.)

**RESPONSE:** Admit.

26. Christensen admits that he had sexual contact with M.J.J. while she was an inmate in the Polk County Jail. (Dkt. 32, Lubinsky Aff. Exh. 2, Christensen Dep. At 32:20-24.)

**RESPONSE:** Admit.

27. Christensen admits that he kissed M.J.J. (*Id.* at 33:2-4.)

**RESPONSE:** Admit.

28. Christensen admits that he put his hand under M.J.J. jail uniform. (*Id.* at 33:8-10).

**RESPONSE:** Admit.

29. Christensen admits that he put his hand in M.J.J.'s underwear and inserted his finger into M.J.J.'s vagina. (*Id.* at 33:11-16.)

**RESPONSE:** Admit.

30. Christensen admits that M.J.J. performed oral sex on him on several occasions. (*Id.* at 37-38:23-2.)

**RESPONSE:** Admit.

31. Christensen denies that he had sexual intercourse with M.J.J. (other than oral sex). (*Id* at 38:14-20.)

**RESPONSE:** Admit.

32. Christensen disagrees with M.J.J. in terms of how many times the sexual interactions between the two of them occurred. (*Id.* at 33-34:17-6.)

**RESPONSE:** Admit.

33. Christensen's testimony is that he had some form of sexual contact with M.J.J. between 15 and 20 times. (*Id.* at 34-35:24-2.)

**RESPONSE:** Admit.

34. Christensen told M.J.J. not to tell anyone about their sexual interactions because he knew he would lose his job. (*Id.* at 37:2-8.)

**RESPONSE:** Admit.

35. Christensen knew his sexual interactions with M.J.J. were wrong. (*Id.* at 37:9-11.)

**RESPONSE:** Deny to the extent that Christensen may have believed that inmates were able to consent. Christensen indicated that he was not aware that inmates were not able to consent to sexual contact. (Dkt. 46, Christensen Dep. 140:12-19; 141:24-142:12.). In all other respects, admit.

36. Christensen knew he would lose his job if anyone found out about his sexual interactions with M.J.J. (*Id.* at 37:12-15.)

**RESPONSE:** Admit.

37. Christensen knew that his sexual interactions with M.J.J. violated Wisconsin's criminal code. (*Id.* at 37:16-18.)

**RESPONSE:** Deny to the extent that Christensen may have believed that inmates were able to consent. Christensen indicated that he was not aware that inmates were not able to consent to sexual contact. (Dkt. 46, Christensen Dep. 140:12-19; 141:24-142:12.) In all other respects, admit.

38. Christensen's sexual interactions with M.J.J. were designed to avoid detection. (*Id.* at 41-43:24-1.)

**RESPONSE:** Admit.

39. As soon as Christensen was made aware of allegations that he had had sexual contact with an inmate, he resigned his employment with Polk County on that very day. (*Id.* at 56:11-16.)

**RESPONSE:** Admit.

40. Christensen was criminally charged with five counts of second degree sexual assault in violation of Wis. Stat. § 940.225(2)(h). (*Id.* at 29:13-15: Dkt. 32, Lubinsky Aff. Exh. 5.)

**RESPONSE:** Admit.

41. Count 5 of the criminal charges filed against Christensen related to his sexual interactions with M.J.J. (Dkt. 32, Lubinsky Aff. Exh. 5.)

**RESPONSE:** Admit.

42. Christensen attended a plea hearing on November 30, 2015. (Dkt. 32, Lubinsky Aff. Exh. 6; Dkt. 32, Lubinsky Aff. Exh. 2, Christensen Dep. At 56:15-22.)

**RESPONSE:** Admit.

43. Christensen was represented by counsel in the criminal charges against him, including at the plea hearing. (*Id.* at 56:23-25.)

**RESPONSE:** Admit.

44. Christensen pled guilty to all five counts of second degree sexual assault, in violation of Wis. Stat. § 940.225(2)(h). (*Id.* at 57:4-6; Dkt. 32, Lubinsky Aff. Exh. 6, pgs 35-36.)

**RESPONSE:** Admit.

45. Christensen understood that by pleading guilty he was admitting to the allegations in the criminal charges. (Dkt. 32, Lubinsky Aff. Exh. 2, Christensen Dep. At 57:7-9.)

**RESPONSE:** Admit.

46. After Christensen pled guilty, the criminal court found him guilty. (*Id.* at 57:11-13; Dkt. 32, Lubinsky Aff. Exh. 6, pgs 35-36.)

**RESPONSE:** Admit.

47. Christensen has been sentenced on the charges and is now incarcerated in the Dodge Correctional Institute. (Dkt. 32, Lubinsky Aff. Exh. 2, Christensen Dep. At 57:14-19.)

**RESPONSE:** Admit.

48. Christensen engaged in sexual interactions with M.J.J. for the sole purpose of his own personal gratification. (*Id.* at 58-59:23-1.)

**RESPONSE:** Deny to the extent that this statement attempts to infer that, due to him acting for personal gratification that he was not acting within the scope of his authority.

49. Christensen was not serving the interest of Polk County when he engaged in sexual interactions with M.J.J. (*Id.* at 59:2-5.)

**RESPONSE:** Deny to the extent that this statement attempts to infer that, due to his belief that he was not serving the interest of Polk County, that he was acting outside of his scope of employment.

50. Christensen knew that having sex with jail prisoners was a crime in Wisconsin. (*Id.* at 73:16-21.)

7

**RESPONSE:** Deny to the extent that Christensen may have believed that inmates were able to consent. Christensen indicated that he was not aware that inmates were not able to consent to sexual contact. (Dkt. 46, Christensen Dep. 140:12-19; 141:24-142:12.) In all other respects, admit.

51. Christensen was repeatedly trained not to have sexual interactions with inmates. (*Id.* at 73:22-23.)

**RESPONSE:** Dispute. The only training Defendant Christensen had regarding the concept of correctional officers having sexual contact with inmates consisted of a four-week program given in 1996 when he was first certified as a jail officer. (Dkt . 46, Christensen Dep. 11:17-14:2; 81:21-25). This was the only training Defendant Christensen had outside the jail. (*Id.* at 82:1-6). Defendant Christensen does not recall Polk County offering or provide any in-house training to its correctional officers on the topic of sexual contact with inmates or PREA (*Id.* at 12:21-13:11; 20:19-25). Christen was only once trained not to have sexual interactions with inmates, and that was 1996.

52. Christensen knew that Polk County policies prohibited him from having sex with inmates. (*Id.* at 73-74:24-2.)

**RESPONSE:** Admit.

53. Christensen knew that he was not supposed to fraternize with inmates in any suggestive or sexual way. (*Id.* at 74:3-6.)

**RESPONSE:** Admit.

54. Wisconsin County Mutual Insurance Corporation ("WCMIC") issued a Public Entity Liability policy of insurance to Polk County covering the four consecutive one-year periods from January 1, 2011, to January 1, 2012 (calendar year 2011); January 1, 2012. To January 1, 2013 (calendar year 2012); January 1, 2013, to January 1, 2014 (calendar year 2013); and January 1, 2014, to January 1, 2015 (calendar year 2014). (Dkt. 13, Bisek Aff. at ¶ 4 and Exhs. 1-4.)

**RESPONSE:** Admit.

55. The policies WCMIC issued to Polk County provide coverage relevant to this action for several types of alleged damages: (1) "bodily injury"; (2) "personal injury"; and (3) "errors and omissions." (*Id.* at Exhs. 1-4; *see Id.* at Exh. 1 pg 40.)

**RESPONSE:** Admit.

56. WCMIC's insurance policies issued to Polk County define an "insured" as follows:

Throughout this policy the words *you* and *your* refer to the Named Insured shown in the Declarations. The words *we, us* and *our* refer to Wisconsin County Mutual Insurance

    Corporation.

    The word *insured* means any person or organization qualifying as such under Section III – Who is an Insured.

(*Id.*)

56.    Section III of WCMIC's policies define an insured to mean:

    1.    *You,* and
    2.    *Your* past or present employees or elected or appointed officials while acting within the scope of their employment or authority, and authorized volunteers, while acting for *you* or on *your* behalf....

(*Id.* at pg. 41)

**RESPONSE:** Admit.

57.    "Bodily injury" is defined in WCMIC's policies to mean "bodily injury, sickness, disability or disease, sustained by a person during the policy period, including death resulting from any of these at any time." (*Id.* at pg. 49.)

**RESPONSE:** Admit.

57.    "Personal injury" is defined in WCMIC's policies as follows:

    *Personal injury* means injury, other than *bodily injury,* during the policy period arising out of one or more of the following offenses:
    1.    False arrest, detention or imprisonment, defective service of process;
    2.    Malicious prosecution;
    3.    Wrongful entry or eviction, or other invasion of the right of private occupancy;
    4.    Liable, slander or defamation of character;
    5.    Sexual harassment, including workplace harassment;
    6.    Assault and battery, including *sexual molestation;*
    7.    Discrimination, including employment discrimination;
    8.    other civil rights violations, including employment related violations.

(*Id.* at pgs. 50-51.)

**RESPONSE:** Admit.

58.    Errors and omissions coverage is defined in the policies as follows: "any misstatement or misleading statement or act or omission or neglect or breach of duty during the policy period, including misfeasance, malfeasance and nonfeasance by an insured in their capacity as such" (*Id.* at pg. 49.)

**RESPONSE:** Admit.

59. The policies of insurance WCMIC issued to Polk County contain an exclusion for "bodily injury" coverage to bodily injury "expected or intended from the standpoint of the insured." (*Id.* at pg. 42)

**RESPONSE:** Admit.

60. The policies of insurance WCMIC issued to Polk County contain an exclusion for "personal injury" arising out of "the intentional or knowing violation of the penal statute or ordinance committed by or with the consent of the *insured*." (*Id.* at pgs. 45-46.)

**RESPONSE:** Admit.

61. Likewise, the policies of insurance WCMIC issued to Polk County contain an exclusion for "errors and omissions" coverage resulting in or arising from:

   1. *Bodily injury* or *personal injury,* except as provided in Section 1 – Insuring Agreement, Retroactive Dates, if the Policy Declarations include a Retroactive Date for Errors and Omissions.

   *****

   3. The Willful violation of a penal code or ordinance committed by or with the consent of any *insured.*

   4. Any deliberately wrongful act, omission or breach of duty committed by or with the consent of any *insured.*

(*Id.* at pgs. 46-47.)

**RESPONSE:** Admit.

62. WCMIC retained separate counsel to defend and represent the interests of Christensen in this lawsuit under a full and complete reservation of rights. (Dkt. 13, Bisek Aff. at ¶ 7.)

**RESPONSE:** Admit.

63. The terms, conditions, limitations and exclusions in the Public Entity Liability policy of insurance preclude coverage for Defendant Christensen for the claims asserted by M.J.J. against Christensen in this action. (*Id.* at ¶ 8.)

**RESPONSE:** Dispute. This is a legal conclusion and not a fact. This proposed fact invades the province of the court in reaching a legal conclusion. *See Plaintiffs Brief in Response to WCMIC's Motion for Summary Judgement* (too voluminous to re-attach to this document) for the full analysis of why this legal conclusion is incorrect.

**ECKBERG LAMMERS, P.C.**

Dated: 8th day of July, 2016    By: s/Lida M. Bannink
　　　　　　　　　　　　　　　　　　Thomas J. Weidner (1082013)
　　　　　　　　　　　　　　　　　　Lida M. Bannink (1088518)
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　430 Second Street
　　　　　　　　　　　　　　　　　　(715) 386-3733
　　　　　　　　　　　　　　　　　　tweidner@eckberglammers.com
　　　　　　　　　　　　　　　　　　lbannink@eckberglammers.com