UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

M.J.J.,

       Plaintiff,

   v.

POLK COUNTY and DARRYL L.
CHRISTENSEN,

       Defendants,                Case No. 15-CV-433

   and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

       Intervenor.

---

J.K.J.,

       Plaintiff,

   vs.

POLK COUNTY and DARRYL L.
CHRISTENSEN,

       Defendants,             Case No. 15-CV-428

   and

WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

       Intervenor.

---

**DEFENDANT POLK COUNTY'S REPLY IN SUPPORT OF ITS
MOTIONS FOR SUMMARY JUDGMENT**

---

Defendant Polk County ("Polk County" or "County"), by its undersigned counsel,

submits the following Reply in Support of Its Motions for Summary Judgment in both Case No.

15-CV-428 and Case No. 15-CV-433.

## INTRODUCTION

In their ponderous response brief, plaintiffs offer, in excruciating detail, their critique of how Polk County operates its jail. The plaintiffs criticize the County for not implementing certain best practices, such as those recommended by the Prison Rape Elimination Act ("PREA") and their paid expert, and for not providing what the plaintiffs believe to be adequate training, supervision and discipline to jail employees. Yet, the plaintiffs fail to show how this litany of criticisms meets the legal standard required to support a claim against the County under 42 U.S.C. § 1983.

To hold Polk County liable for Christensen's actions, the plaintiffs must prove that Polk County enacted an official "custom" which the County knew would cause, or would obviously cause, inmates like the plaintiffs to be sexually assaulted by jail officers. The plaintiffs pay lip service to this standard, but they fail to allege any particular custom that they claim caused the violations of their rights. Instead, the plaintiffs allege a mixed bag of perceived inadequacies in training, discipline, and supervision that they claim "created a culture that fostered, encouraged, and caused Christensen to engage in sexual acts" with the plaintiffs. Without any supporting authority, the plaintiffs argue this alleged "culture" was an established Polk County custom for purposes of *Monell* liability. But even if the plaintiffs' could satisfy their burden to demonstrate this "culture" amounted to a Polk County custom, they fail to present any evidence that Polk County policymakers were aware of this alleged culture, that they knew, or that it was obvious, this culture would cause jail officers like Christensen to sexually assault inmates, or that they were deliberately indifferent to such consequences.

With regard to their state law claims, the plaintiffs argue there is a question of fact as to whether Christensen was acting within the scope of his employment when he engaged in sex with the plaintiffs. The plaintiffs maintain this dubious argument in the face of unequivocal

testimony from Christensen himself that he knew his actions were contrary to Polk County policy and Wisconsin law, and that he engaged in sex with the plaintiffs solely for his own personal gratification.

In the absence of any evidence Polk County was deliberately indifferent to an established municipal custom the County knew would cause, or would obviously cause, the plaintiffs' constitutional injuries, the plaintiffs' § 1983 claims fail. Similarly, because there is no material question of fact that Christensen's illicit acts were not performed within the scope of his employment, plaintiffs' state law claims fail as well. Summary judgment should be granted in favor of Polk County.

## FACTS

Many of the "facts" alleged in Plaintiffs Proposed Findings of Fact are nothing more than speculation and innuendo based on carefully selected, incomplete, and in some cases, blatantly inaccurate references to the evidence and testimony. Throughout their brief and their proposed findings of fact, the plaintiffs include lengthy and detailed repetition of facts in the record, exaggerating the few allegations of prior misconduct at Polk County Jail and apparently attempting to impugn the competence of its administrators. A complete review of the facts, however, reveals a different picture.

Brad Hompe, the Detention Facilities Specialist for the Wisconsin Department of Corrections, has conducted annual inspections of the Polk County Jail for the past seven years to evaluate the jail's compliance with applicable standards of practice. (*See* Deposition of Brad Hompe ("Hompe Dep."), ECF No. 72 (Case No.15-CV-428) and ECF No. 73 (Case No. 15-CV-433), at 5, 8-10; *see also*, Aug. 16, 2016 Declaration of Paul Cranley ("8/16/16 Cranley Decl."), ¶¶ 6-13, Exs. D-K, 2009-16 WI Dept. of Corrections Inspection Reports ("DOC Inspection Reports")). Each year, Hompe has found Polk County's jail operations and its policies in full

compliance with all applicable laws, including Wis. Stat. § 302 and Wis. Admin. Code § 350, which closely regulate Wisconsin jails. (*See* Hompe Dep. 56-57; *see also*, 8/16/16 Cranley Decl. ¶¶ 6-13, Exs. D-K, DOC Inspection Reports.)  Further, in virtually every one of his reports, Hompe has specifically commended Polk County's Jail Administrator, Captain Scott Nargis, for his "efforts to improve and professionalize jail operations," and for making "positive operational improvements" to the jail.  (*Id*.)  Indeed, Hompe testified that of the 17 county jails in his region, Polk County Jail is among the most well run.  (Hompe Dep. 56.)

For further clarification of the facts, *see* Polk County's Response to Plaintiffs' Proposed Findings of Fact ("Resp. to Pls.' PFOF") and Polk County's Reply to Plaintiffs' Response to Polk County's Proposed Findings of Fact ("Reply to Pls.' Resp. to PCPFOF").

## ARGUMENT

**I.     SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS' § 1983 CLAIMS BECAUSE THERE IS NO EVIDENCE TO SUPPORT A FINDING THAT POLK COUNTY WAS DELIBERATELY INDIFFERENT TO A COUNTY POLICY OR CUSTOM THAT CAUSED THE VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS.**

In order to recover against a municipality under § 1983, it is not enough for plaintiffs to show that an employee of the municipality violated their constitutional rights; they must show that their injuries were the result of an official policy or custom of the municipality.  *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F. 3d 650, 675 (7th Cir. 2012), citing *Monell v. Dep't of Soc. Servs. Of City of New York,* 436 U.S. 658, 690-91 (1978).  The plaintiffs must also show a direct causal connection between the policy or practice and their injury; in other words, that the policy or custom was the "moving force" behind the constitutional violation." *Id.*, *citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Monell*, 436 U.S. at 694 and *Polk Cnty. v. Dodson*, supra, 454 U.S. 312, 326 (1981).

Where, as here, the plaintiffs cannot show their constitutional rights were violated by an express policy or by a the direct actions of a policymaker, the plaintiffs may establish liability by demonstrating the existence of a municipal "custom;" that is, a "practice[ ] so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *and see Monell*, 436 U.S. at 690-91.  The rationale underlying this theory is that "[i]f the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

Further, where a plaintiff seeks to establish municipal liability based on a custom, the plaintiff must demonstrate the municipal action constituting the custom was taken "with 'deliberate indifference' as to its known or obvious consequences." *City of Canton*, 489 U.S. at 388. A showing of simple or even heightened negligence will not suffice.  *Bd. Of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U. S. 397, 407 (1997).

Summary judgment is properly granted on a *Monell* claim where the plaintiff fails to come forward with evidence from which a reasonable jury could conclude the municipality established a custom that caused the plaintiff's constitutional deprivation.  *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 646 (7th Cir. 2003).  Here, the plaintiffs fail to present any evidence of a widespread practice, or custom, that caused the violation of their constitutional rights, nor do they present any evidence Polk County was deliberately indifferent to the known or obvious consequences of such a policy.  Although they allege a variety of perceived inadequacies in the Polk County Jail, they provide no evidence that any of these deficiencies actually caused the violations of their constitutional rights perpetrated by Christensen.  Summary judgment should therefore be granted on the plaintiffs' *Monell* claims.

**A.      Plaintiffs Cannot Prove A Custom Where Polk County Had No Notice Of Any Prior Similar Conduct.**

Because proof of a municipal custom requires the plaintiff to establish a "widespread practice," evidence of "isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference." *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003). Thus, the plaintiffs cannot hold the County liable without showing a "series of violations" to which the County was deliberately indifferent. Yet the evidence establishes Christensen's sexual exploits with the plaintiffs were "isolated acts of misconduct." *See id.* Polk County had no knowledge of any prior instances of sexual misconduct at the jail. Of the 19,555 inmates booked into Polk County Jail (1777 per year) since 2005, Polk County Jail investigated two claims related to alleged improper sexual comments or conduct. (August 16, 2016, Declaration of Scott Nargis ("8/16/16 Nargis Decl.") ¶ 10.) The facts of these alleged incidents are greatly exaggerated and distorted by plaintiffs (*see*, Pls.' Resp. Br. at 25-31), but neither situation put Polk County policymakers on notice of a substantial risk that plaintiffs or other inmates were likely to be sexually assaulted by jail staff.

**1.      Captain Nargis is not a policymaker**.

The plaintiffs do not allege Captain Nargis directly violated their rights. Rather, their insistence that Captain Nargis is a policymaker is, according to their brief, in response to the County's assertion that Polk County policymakers were not on notice of a pattern of constitutional violations prior to the revelation of Christensen's crimes. (*See* Pls.' Resp. Br. at 8, citing Polk County's Opening Brief at 11-12 where Polk County argued no policymaker had notice of prior instances of sexual abuse in the jail.) Apparently conceding that no one with policymaking authority above Nargis had such notice, the plaintiffs attempt to cast Captain Nargis as a policymaker, and then claim that he had notice. However, Captain Nargis did not

have final policymaking authority; but even if he did, Captain Nargis was also not on notice of a history of sexual abuse that could give rise to *Monell* liability.

The question of whether a government actor "has final policymaking authority is a question of state or local law." *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.,* 183 F.3d 734, 737 (7th Cir. 1999)). And "[n]ot every municipal official with discretion is a final policymaker; authority to make final policy in a given area requires more than mere discretion to act." *Milestone*, 665 F.3d at 780. (citing *Darchak v. City of Chicago Bd. Of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001)). If the government actor's decisions are subject to review by a higher authority, then that individual is not a final policymaker, and the municipality is not liable. *Milestone*, 665 F.3d at 780; *Gernetzke*, 274 F.3d at 469.

It is true that all of the jail officers in Polk County Jail report to Captain Nargis, and it is also true that Captain Nargis is the person primarily in charge of writing jail policies and conducting in-house officer training. (Polk County's Proposed Findings of Fact ("PCPFOF") ¶ 50, ECF No. 56 (Case No. 15-CV-428) and ECF No. 57 (Case No. 15-CV-433); Resp. to Pls.' PFOF ¶ 48.) However, that is far from establishing that Captain Nargis is the final policymaker for the Polk County Jail. Captain Nargis reports to the Chief Deputy Sheriff, who in turn reports to the Sheriff. (8/16/16 Nargis Decl., ¶ 2.) Captain Nargis's decisions are subject to review, at least, by the Chief Deputy and by the Sheriff. Clearly, if either of them disagree with a policy or personnel decision made by Captain Nargis, they have the ability to overrule it. (8/16/16 Nargis Decl., ¶¶ 4-5.) Further, the evidence establishes that Captain Nargis meets frequently with the Chief Deputy and with the Sheriff to keep them apprised of jail operations, including the content

of officer training.  (8/16/16 Nargis Decl., ¶ 9.) When the allegations of sexual misconduct against Christensen arose, Chief Deputy Moe conducted the initial investigation and made the referral to the Department of Justice to initiate a criminal investigation. (8/16/16 Cranley Decl. ¶ 3, Ex. A.)  In short, Captain Nargis does not run the Polk County Jail without oversight from the Chief Deputy and the Sheriff.  He is not a "policymaker" for purposes of § 1983 liability.

> ### 2.    The prior allegations against Christensen and Jorgensen did not put the County on notice of a widespread practice of sexual misconduct.

The plaintiffs blatantly mischaracterize the evidence when they argue "Polk County had notice of prior allegations of sexual assault that occurred within their facility."  (Resp. Br. at 25).  As supposed support for this statement, the plaintiffs first attempt to suggest Christensen had been accused by an inmate of "sexual assault" in 2004.  (Resp. Br. at 25.)  In fact, the inmate merely complained that Christensen had entered the female pod to remove cleaning supplies at the same time she was in the shower. (Resp. to Pls.' PFOF ¶ 68).  Christensen stated he did not go near the shower, and in any event, the inmate's shirt was hung over the shower door window.  (*Id.*)  The inmate did not dispute this, but replied that the shirt was only partially covering the window, and Christensen "would have been able to see her while walking up the stairs."  (*Id.*)  She also complained that Christensen had made inappropriate comments of a sexual nature.  (PCPFOF ¶ 70).  However, there was also evidence from another officer that several of the inmates, including the one making the complaint, had been overheard "conspiring to catch Officer Christensen in a bad situation" to get him in trouble.  (Resp. Pls.' PFOF ¶ 71).  In light of this and other conflicting information revealed during Captain Nargis's investigation, and based on the fact that Christensen was an experienced officer with no prior allegations of this nature, no discipline was warranted, and Captain Nargis cautioned Christensen to avoid entering the women's pod unless it is necessary.  (Resp. Pls.' PFOF ¶¶ 68, 69, 71, 72).

In his nearly twenty years with the Polk County jail, this unsubstantiated allegation is the only prior reported "incident" involving Christensen that is in any way related to inappropriate sexual conduct. The incident was fully investigated and addressed with Christensen. (*See Id*.). Plaintiffs may disagree with Captain Nargis's conclusion or his decision not to discipline Christensen, but the evidence shows he was not deliberately indifferent.

Plaintiffs next argue that the allegations directed at Allen Jorgensen should have put the County on notice that it had a problem with sexual misconduct among its officers. (Pls.' Br. at 25-31). Plaintiffs devote six pages of their brief to detailing the allegations of improper conduct against Jorgensen by various inmates and staff. (*Id*.) What plaintiffs fail to disclose, however, is that virtually all of these facts were discovered as a result of the diligent investigation conducted by Captain Nargis and Chief Deputy Moe. (Resp. to Pls.' PFOF ¶¶ 74-75).

Jorgensen's alleged improper behavior came to light on January 15, 2012, following a comment another inmate overheard Jorgensen make over the intercom to a female inmate the day before. (Resp. Pls.' PFOF ¶ 74). Nargis and Moe immediately undertook to investigate that incident, conducting numerous interviews of inmates and jail staff that disclosed alleged improper conduct involving multiple inmates and inappropriate comments made to several female jail officers. (*Id*. at 74, 75). After the inmate involved in the initial incident—who initially stated there was no improper relationship between Jorgensen and her—changed her story, further investigation was conducted. (*Id.* at 79-81). Although Jorgensen's alleged improper conduct occurred over a period of a few years, the entire investigation that uncovered it spanned only about two weeks. On January 30, 2012, jail management reached its decision to issue a formal reprimand and to refer the matter to Employee Relations for further investigation

and possible discipline.  (*Id.* at 85).  Jorgensen resigned four days later, on February 3, 2012. (*Id.*)

Again, the swiftness and the thoroughness with which Polk County investigated the initial allegations and discovered the full extent of the misconduct alleged against Jorgensen demonstrates that Polk County took such matters seriously.  Although plaintiffs characterize Jorgensen's alleged conduct as "harassment" and even "sexual assault," it must be noted that none of the alleged behavior even approached the severity of the criminal conduct perpetrated by Christensen.  There were only a few incidents in which inmate even claimed Jorgensen touched her, and there was no allegation he even tried to touch them under their clothes.  Plaintiff does not argue the facts warranted a criminal investigation of Jorgensen, and although plaintiffs appear to believe Polk County should have imposed harsh discipline on Jorgensen, that would hardly have been possible in light of his prompt resignation.

Thus, while plaintiffs devote page after page of their brief to recounting many of the detailed facts developed by Polk County through its investigations, these facts do not establish Polk County had notice of widespread sexual misconduct in the jail.  At most, they show that one jail officer, Jorgensen, was alleged to have engaged in inappropriate and harassing behavior with various inmates and staff, and that he retired quickly after being confronted with the claims. Further, the investigation and documentation of the incidents make clear Polk County did not treat these matters with deliberate indifference.

### B.    The Plaintiffs Cannot Prove An Unconstitutional Custom Based On Polk County's Decision Not To Fully Implement PREA Standards.

Plaintiffs concede they have no cause of action based on any alleged violation of PREA. (Pls.' Resp. Br. at 14, 38.)  *See also*, *Rivera v. Drake*, No. 09-CV-1182, 2010 WL 1172602, at *3 (E.D. Wis. Mar. 23, 2010) (rejecting PREA as a basis for a private right of action under § 1983).

Nevertheless, plaintiffs argue at great length that Polk County was required to comply with all aspects of PREA, and that by not doing so Polk County established a custom of encouraging sexual misconduct that caused Christensen to violate the plaintiffs rights.

Plaintiffs argue that the recommendations contained in PREA are "mandatory" for Polk County and other county jails. (Pls.' Resp. Br. at 2, 12-14.)  In supposed support of this statement, the plaintiffs cite the Department of Justice's Notice of the Final Rule on PREA, 77 Fed. Register 37106.  The Department's discussion of its rule, however, directly contradicts the plaintiffs' assertion.  The plaintiffs' argument also contradicts the opinion of their own paid expert, Jeffrey Eiser, who testified that PREA implementation is "voluntary" for county jails (Resp. to Pls.' PFOF ¶ 120); and, their argument also contradicts the testimony of the DOC's Detention Facilities Specialist, Brad Hompe, who testified that PREA compliance is not required and that none of the county jails under his jurisdiction are fully compliant.  (Resp. to Pls.' PFOF ¶¶ 55, 120).

In explaining its final rule with regard to PREA, the Department of Justice stated:

> However, with respect to the thousands of state and local agencies, and private companies, that own and operate confinement facilities across the country, PREA provides the Department with no direct authority to mandate binding standards for their facilities.  Instead, PREA depends upon state and local agencies to make voluntary decisions to adopt and implement them. . . .
>
> In deciding whether to adopt these standards, agencies will of necessity conduct their own analyses of whether they can commit to adopting the standards in light of other demands on their correctional budgets.  The Department cannot assume that all agencies will choose to adopt and implement these standards.  An agency assessing whether to do so may choose not to based upon an assessment that, with regard to that specific agency, the costs outweigh the benefits.

77 FR 37106-01, at *37196.

Consistent with the Department of Justice's view, Brad Hompe, the Detention Facility Specialist responsible for inspections of Polk County Jail for the Wisconsin Department of Corrections, testified PREA is not mandatory for county jails. (Resp. to Pls.' PFOF ¶ 55; Hompe Dep. 15.)  While he testified that the Department of Corrections "encourage[s] them to look at the standards, and implement what they can . . . . their compliance at this time is voluntary or on their own decision." (*Id.*; Hompe Dep. 15-16).  Hompe further testified there is not a single jail among the 17 in his region that is fully PREA compliant, and some have chosen to do nothing at all to implement it:

> "It's completely up to them at this point.  Again, some jails have done nothing at all.  They haven't even acknowledged it.  Some have done the basics and some are full-fledged trying to implement every single standard.  I don't think anybody in this region has gone to the point of getting an audit because of the cost.  That's one of the troubling components of PREA for the jails is requiring that audit."

(*Id.*; Hompe Dep. 42-43.)

Thus, Hompe asks the jail administrators in his group, "not to ignore PREA, to take a look at the standards and implement what makes sense for them." (*Id.*; Hompe Dep. 43).  He acknowledged, however, that "some of the standards—facility-wise, they may not simply be able to meet, because of the way the facility is designed or the staffing provided."  (*Id.*) He explained further that "[s]ome of the standards were troubling to the jail administrators and they simply—a couple of them, they simply were not going to acknowledge."  (*Id.*)

Polk County is not one of those facilities that chose not to acknowledge PREA.  In response to PREA, Polk County updated its Jail Manual and its Inmate Handbook, and conducted training for its staff.  This fully complies with Hompe's recommendations to the jails in his region, whom he advises to implement what he considers to be the basics of PREA; those include: 1) informing inmates they have the right not to be sexually abused; 2) having a reporting

mechanism for inmate sexual abuse; 3) training jail staff so they know how to handle reports of sexual abuse; and 4) having an investigative process to "clearly vet those complaints." (Hompe Dep. 35.)

Hompe agreed Polk County implemented these recommendations. First, the notice provided in Polk County's Inmate Handbook satisfies the notice provision. (Hompe Dep. 60-61; *see also* PCPFOF ¶ 35). Second, the grievance process provided in Polk County's Jail Manual provides a "reporting mechanism" for inmates involved in sexual abuse that meets the basic PREA standard. (Hompe Dep. 62; *see also* PCPFOF ¶ 35-40). Third, Polk County has in place a procedure for investigating inmate complaints, including complaints of sexual abuse. (Hompe Dep. 63.) Fourth, Polk County has provided training on PREA, as well as providing training on its policies, which specifically reference many of the basic requirements of PREA. (Hompe Dep. 63-64; *see also* PCPFOF ¶ 31-34, 38, 42-47).

Although Plaintiffs repeatedly mischaracterize the testimony of Captain Nargis and Sheriff Johnson with regard to their knowledge of PREA, there is no dispute they are aware of and considered the implications of enacting PREA's various provisions in their local jail. (Resp. to Pls.' PFOF ¶¶ 61, 63) Polk County has made the decision that fully implementing all of the provisions of PREA is not cost effective, or even possible, for Polk County within its budgetary constraints. (*Id.*) In addition, Polk County, like other county jails, has concluded that some of the provisions of PREA are contrary to sound correctional practices. (PCPFOF ¶¶ 54-55; Hompe Dep. 59.) The plaintiffs may disagree with these conclusions, but the fact that Polk County chose not to fully implement PREA is insufficient to support a finding of deliberate indifference. Even if the plaintiffs and their expert are correct that PREA represents a best practice for the corrections industry, "the Constitution does not require police to follow the best recommended

practices." *Graves v. Mahoning Cnty.*, 821 F.3d. 772, 778 (6th Cir. 2016); *see also, e.g., Eady v. Young*, No. 4:12-CV-28, 2014 WL 11455973, at 9 (E.D. Tenn. Jan. 6, 2014) ("the practices of a municipality cannot be deemed unconstitutional simply because they are not the best possible methods.")

The undisputed evidence establishes that while Polk County had no obligation to implement PREA recommendations, the County followed the advice of the DOC, acknowledged PREA, and voluntarily incorporated its provision into the jail's policies and practices to the extent the County believed helpful and feasible.  Under these facts, the County cannot be held to have acted with deliberate indifference.

> **C.    Summary Judgment Should Be Granted Because There Is No Evidence Polk County Was Deliberately Indifferent To A Need For Further Training And Because, As A Matter Of Law, The County Cannot Be Held Liable For Failure To Train Where It Met State Training Requirements.**

A municipality may be held liable for a failure to train its police officers "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Dunn*, 347 F.3d at 646, citing *City of Canton,* 489 U.S.at 388.  Mere allegations that the municipality could have or should have incorporated different training programs are insufficient; so too are mere allegations that "a particular officer may be unsatisfactorily trained." *City of Canton*, 489 U.S. at 389–91. To prove deliberate indifference, the plaintiffs must prove the County was "on actual or constructive notice that a particular omission in [its] training program cause[d] [County] employees to violate citizens' constitutional rights," and that the County nevertheless made the conscious decision to retain that program. *Connick*, 563 U.S. at 60.

Thus, to hold Polk County for a failure to train, the plaintiffs must prove the County (1) "fail[ed] to train its employees to handle a recurring situation that present[ed] an obvious

potential for a constitutional violation and this failure to train result[ed] in a constitutional violation," or (2) "fail[ed] to provide further training after learning of a pattern of constitutional violations."  *Dunn*, 347 F.3d at 646, *citing Brown*, 520 U.S. at 409; *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997); *Palmquist v. Selvik*, 111 F.3d 1332, 1346 (7th Cir. 1997).

### 1.     Polk County provided training and had no evidence of prior constitutional violations requiring additional training.

There is no evidence of a "pattern of constitutional violations" by jail officers at Polk County.  As discussed above, the County did not have notice of any prior sexual assaults by jail officers.  The plaintiffs instead try to argue that the supervision of female inmates by male officers alone presents an "obvious" risk that male guards will sexually assault female inmates. (Pls.' Br. at 35-38).  This argument fails for a number of reasons.  First, supervision of female inmates by male officers is, for all practical purposes, inherent in the correctional system.  Polk County's policy regarding supervision of opposite sex inmates complies with state law and is commonplace in the industry.  (Hompe Dep. 65-66).  Further, to adopt a different model in which male officers could not supervise female inmates in their activities of daily living, such as dressing and undressing, would require costly remodeling of the jail (Deposition of Jeffrey Eiser ("Eiser Dep.") 53-59, ECF No. 76 (Case No.15-CV-428) and ECF No. 77 (Case No. 15-CV-433)) or redundant staffing Polk County could not afford, even if it was possible.  (PCPFOF ¶ 56; Resp. to Pls.' PFOF ¶ 61).   Further, making staffing decisions based solely on gender would put the County at risk for claims of gender discrimination.  *Henry v. Milwaukee Cnty.*, 539 F.3d 573, 582-83 (7th Cir. 2008) (holding that gender-based staffing in correctional facilities was not reasonably necessary for rehabilitation, security, or privacy functions of the facility, and could be found to violate Title VII.)

Second, the mere fact that a male officer is assigned to supervise female inmates does not present an "obvious" risk that he will sexually assault them.  A risk is obvious where the risk is "long-standing, pervasive, well-documented, or that it has been expressly noted by prison officials in the past."  *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  In the absence of any history of sexual abuse of inmates by guards, it cannot be said that the possibility that such abuse could take place in the future—simply because the opportunity for a male officer to abuse his authority arguably exists—presents an "obvious" risk.

Third, Polk County did provide ample training directly relevant to the risk of improper sexual relations between officers and inmates.  Plaintiffs' specifically admit that "[a]s part of their training, all Polk County jailers are instructed that inappropriate and sexual contact with inmates is unprofessional and in violation of the Wisconsin Statutes."  (Pls.' Resp. to PCPFOF ¶ 41.)  It is further undisputed that all jail officers, including Christensen, received training on all policies, including those relating to supervision of inmates, inmate fraternization, and inmate rights and grievance procedures.  (PCPFOF ¶¶ 40-49).  Jail officers also attended training required by state law to become certified jailer officers, and received field training for several weeks after hire.  (PCPFOF ¶ 40; *see also* Wis. Stat. § 165.85(4).  In addition, Polk County maintained a schedule that provided periodic training sessions on various topics throughout the year, and implemented a daily training program that required jailers to review a chosen policy and confirm they had done so.  (PCPFOF ¶ 43; Resp. to Pls.' PFOF ¶¶ 6, 113, 115).

The fact that Christensen chose to defy policies (and criminal laws) he knew and understood is not enough to create a question of fact as to whether Polk County was deliberately indifferent to a need for further training.  *Dunn*, 347 F.3d at 646.  In *Dunn*, two Elgin police officers were instructed to provide "peacekeeping standby services" with regard to an

16

unenforceable out of state child custody order.  *Id*. at 644-45.  Instead, the officers entered the

child's mother's home and took custody of the child and delivered her to the father.  *Id*. at 645.

The mother sued the City, alleging it failed to adequately train its officers.  *Id*.  The trial court

granted summary judgment in favor of the city, and the Seventh Circuit affirmed.  *Id*. at 652.

First, the court held that an order to provide "standby services" was clear on its face and did not

require additional training.  *Id*. at 646.  Second, Elgin had a policy, on which all officers received

training, that stated officers were not to enforce civil orders.  *Id*. at 645.  Despite the fact the

subject officers failed to follow it, the existence of the policy defeated plaintiff's claim.  *Id*. at

646.  The court explained:

> The fact that two police officers did not follow the policy set forth
> by the City of Elgin is not enough to prove deliberate indifference
> by the City. Rather, Plaintiffs had to show that the City was aware
> that unless further training was given the officers would undermine
> the constitutional rights of others. There is no evidence to support
> this conclusion, and therefore Plaintiffs cannot proceed against the
> City under § 1983.

(*Id*.) (internal citations omitted.)

As in *Dunn*, Polk County policy is "clear on its face" with regard to having sexual

contact with inmates.  For example, Policy No. C-202 states that "In addition to Department

policies against sexual misconduct, Wisconsin State Statutes make it a criminal offense for

correctional staff members to have sexual intercourse or contact with an individual confined in a

correctional institution." (PCPFOF ¶ 33.)  No training was even required to advise Christensen

his conduct was not permitted, and it is undisputed Christensen read and understood this policy,

as well as the Wisconsin criminal statute making such conduct a felony.  (PCPFOF ¶¶ 69-74.)

The fact that Christensen chose not to follow that policy, despite his training, provides no

evidence the County acted with deliberate indifference.  There is no evidence the County "was

aware that unless further training was given the officers would undermine the constitutional

rights of others." *Dunn,* 347 F.3d at 646, *citing Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000).

Plaintiffs argue the County's training program was deficient because it did not include training recommended by PREA.  As discussed above, the County was under no obligation to provide PREA training.  But unlike many county jails in Wisconsin, Polk County did not ignore PREA, but incorporated PREA into its Jail Manual and Inmate Handbook and provided training on PREA.  The plaintiffs make much of the fact that Christensen missed the PREA training in February 2014.  That training session was, of course, after the vast majority of his sexual encounters with the plaintiffs, and therefore could not possibly have prevented the conduct at issue in this case.  But even if Christensen failed to receive adequate instruction on PREA because he missed the training, that fact does not support a finding of deliberate indifference where Polk County provided the training to the department as a whole.  *See City of Canton*, 489 U.S. at 389–91 (allegations that "a particular officer may be unsatisfactorily trained" are insufficient.)

### 2. There is no evidence any failure to train caused the plaintiffs' injuries.

Even if the plaintiffs could establish that Polk County's training program was deficient, "for liability to attach, the identified deficiency must be closely related to the ultimate injury." *City of Canton,* 489 U.S. at 391.  In *City of Canton*, the plaintiff alleged the City maintained a policy of allowing officers who received no medical training to determine whether a detainee required medical care.  *Id*. at 381.  The court held that merely proving the training deficient was not enough; the plaintiff "must still prove that the deficiency in the training actually caused the police officers' indifference to her medical needs."  In other words, the plaintiff must provide an answer to the question of "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"  *Id*.

Here, plaintiffs must prove that the alleged deficiency in Polk County's training caused Christensen to sexually assault the plaintiffs; or, put another way, that the injury would have been avoided if Christensen had received the training plaintiffs claim was lacking.  There is no evidence to support such an assertion.  In addition to the fact that much of the conduct occurred before the PREA training Christensen missed, it is pure fantasy to suggest that any other training Polk County might reasonably have provided would have deterred Christensen from his illicit actions.  Christensen has admitted he knew his conduct was in violation of Polk County policy and Wisconsin criminal law long before he engaged in it.  It defies reason to suggest that further training would have convinced Christensen not to engage in acts he already knew were wrong.

### 3. As a matter of law, Polk County cannot be held liable for a failure to train where it met state statutory training requirements.

Finally, Seventh Circuit case law is dispositive of the plaintiffs' failure to train claim. *See Tapia v. City of Greenwood*, 965 F.2d 336, 339 (7th Cir.1992).  In *Tapia*, the plaintiff alleged the defendant city failed to adequately train its officers regarding procedures for warrantless searches. The city showed that it was in compliance with the Indiana's minimum standards for training officers, and that the officers involved had received such training. The court held that where a state imposed minimum training standards on municipalities, evidence showing adherence to those standards barred any finding that the city was deliberately indifferent to the need for better training. *Id.*

The training of jail officers in Wisconsin is governed by state law. The Law Enforcement Standards Board prescribes minimum requirements for jail officer training. *See* Wis. Stat. § 165.85(3); *see also Harper v. City of Kenosha*, No. 09-CV-88, 2011 WL 2912741 at *6 (E.D. Wis. July 18, 2011).  Jail officers at Polk County Jail are all certified within 12 months of hire, as required by Wis. Stat. § 165.85(4)(b).  (Def's PPOF ¶ 40.)  Christensen was certified within 12

months of when he was hired, and was recertified every two years thereafter. (Def's PPOF ¶¶ 63, 64.) As a matter of law, therefore, Polk County's adherence to state training standards bars any finding it was deliberately indifferent to the need for better training. *Harper,* 2011 WL 2912741 at 6, (applying Wis. Stat. § 165.85 and holding that "Under *Tapia*, compliance by a municipality with such standards precludes a reasonable jury from upholding a charge of deliberate indifference.")

### D. Plaintiffs' Claim Based On A "Failure To Train Inmates" Lacks Any Legal Or Factual Support.

The plaintiffs provide no legal support—because none exists—for their claim that Polk County had a constitutional obligation to provide training to its inmates. Instead, the plaintiffs argue their failure to train inmates claim is governed by the same law applicable to a claim based on a failure to train staff. Thus, plaintiffs submit that the County has the same obligation to train jail inmates as it does to train jail officers, whose training is mandated by Wisconsin law. Plaintiffs provide no support for this untenable argument. Their claim should be rejected on that basis alone.

The only basis plaintiffs provide for any duty to train inmates is PREA. As discussed above, PREA imposes no mandatory legal obligations on Polk County. In addition, as plaintiffs concede, PREA does not provide a private right of action. *See e.g., Rivera*, 2010 WL 1172602, at *3 (rejecting PREA as a basis for a private right of action under § 1983). While plaintiffs claim they are not attempting to assert a private right of action under PREA, they are effectively attempting to just that with regard to their "failure to train inmates" claim, since that is the only legal basis they offer in support.

Plaintiffs assert that PREA recommends educating inmates on several topics, including that the facility does not tolerate any form of sexual abuse and that inmates should report any

such abuse through an established process.  Polk County provided this "training" to inmates by including in the Inmate Handbook a notice, in both English and Spanish, on the same page as the inmate grievance procedure, which states:

> Every inmate has the right to be safe from sexual abuse and harassment.  No one has the right to pressure you to engage in sexual acts.  If you are being pressured threatened, or extorted for sex, you should report this to staff immediately.

(PCPFOF ¶ 39; Resp. to Pls.' PFOF ¶¶ 131, 134-136.)

Plaintiffs complain that this notice does not provide all of the information recommended by PREA.  But Polk County was under no obligation to provide any such notice—let alone training—at all.  (Resp. to Pls.' PFOF ¶ 130.)  Nevertheless, the County voluntarily revised its Inmate Handbook to incorporate this notice.  The plaintiffs may believe the County should have provided additional or different training to inmates, but it cannot be said the County was deliberately indifferent to the need to notify inmates of their rights to be free from sexual abuse and to have a mechanism to report it.  *City of Canton*, 489 U.S. at 389-91 (allegations municipality should have provided different or additional training are insufficient to prove the deliberate indifference necessary to sustain a claim for failure to train).  Indeed, Polk County undertook this effort even without any history of sexual abuse or harassment in the jail.

Plaintiffs make exaggerated reference throughout their brief to Polk County's decision not to avail itself of the "numerous" and "extensive" materials available through Hompe and the Department of Corrections.  In fact, Hompe testified the DOC provided two items regarding PREA, a PowerPoint that could be used for PREA training, and posters that could be hung in the jail.  (Resp. to Pls.' PFOF ¶ 121.)  Plaintiffs mockingly argue Captain Nargis did not choose to put up posters on the jail wall because he was afraid someone would tunnel out of the jail, as in the movie "Shawshank Redemption."  (Resp. Br. at 22.)  In fact, Captain Nargis testified he does

not put up posters for safety reasons.  He explained, "One safety reason is, those posters could hide attempts to chisel out or tunnel through a section, and/or provide a space where contraband could be hidden."   (Resp. to Pls.' PFOF ¶ 146.)  Plaintiffs selective, and flippant, characterization of Captain Nargis's testimony indicates a complete lack of understanding for the very real problem of preventing contraband, such as drugs, from entering county jails.

Plaintiffs also reference the opinion of their paid expert, Jeffrey Eiser, that inmate education is important.  (Resp. Br. at 40-41).  At most, the recommendations of Mr. Eiser, and of PREA, provide evidence of "best practices" that plaintiffs advocate Polk County should adopt.  However, neither Eiser's opinions, nor the PREA standards he espouses as best practices, represent the constitutional standard.  *See Rhodes v. Chapman*, 452 U.S. 337, 348 n.13 (1981) (expert opinion on matters of prison administration do not establish Eighth Amendment standard); *Inmates of Occoquan v. Barry*, 844 F.2d 828, 837 (D.C. Cir. 1988) ("[T]he obvious danger of employing professional standards as benchmarks is that they ineluctably take the judicial eye off of core constitutional concerns and tend to lead the judiciary into the forbidden domain of prison reform."); *see also*, Polk County's Brief in Support of Motion for Summary Judgment at 20-21.

**E.     Plaintiffs' claim that Polk County created a "culture" that promoted sexual abuse of inmates is based on factual distortions and an absence of legal authority.**

In its final effort to identify an unconstitutional policy or custom, Plaintiffs assert that "Polk County created a culture within the jail that fostered, encouraged, and caused Christensen to engage in sexual acts with inmates."  (Resp. Br. at 41.)  The plaintiffs claim this "culture" was created by Polk County's alleged failure to adopt PREA, to train inmates and staff and to respond to prior allegations of sexual misconduct.  As discussed above, none of these claims supports a finding of an unconstitutional policy or custom that violated plaintiffs' rights.

22

Plaintiffs apparently hope, however, that by lumping all of these failed allegations together and calling it a "culture" they can convince the Court they constitute an unconstitutional custom. However, plaintiffs provide absolutely no legal authority, and indeed do not cite a single case, to support their position.

In an effort to bolster the failed arguments discussed above, the plaintiffs pile on distorted allegations that Polk County failed to discipline jailers for bad conduct and generally "fostered an inappropriate, sexually charged atmosphere within the jail." (Resp. Br. at 42.) The plaintiffs allegations amount to nothing more than a criticism of the way Polk County runs its jail and manages its employees. The plaintiffs mistake those criticisms for constitutional violations. At best, the plaintiffs' claim is a "failure to supervise." But for such a claim to rise to the level of an unconstitutional custom, the plaintiffs must prove the County was deliberately indifferent to the failed supervision, and that it caused Christensen to engage in criminal acts against the plaintiffs. *See, e.g., Pullen v. House*, 88 F. Supp. 3d 927, 945-46 (W.D. Wis. 2015) (applying same standard to failure to supervise claim as to failure to train claim, and citing *Connick*, 563 U.S. at 60.) Plaintiffs cannot meet this standard.

For example, Plaintiffs argue that Polk County had a "custom that rule violations were not taken seriously." (Resp. Br. at 42.) The plaintiffs make no attempt to allege or prove, as they must, that this failure was widespread and pervasive. *Connick*, 563 U.S. at 60. The only rules violations plaintiffs claim were not taken seriously are those documented in Christensen's personnel file. However, those documents show that rules violations—including one as minor as talking on his cell phone during business hours—were investigated, documented, and addressed with Christensen. (Resp. Pls.' PFOF ¶¶ 90-101). Substituting their judgment for jail management, plaintiffs apparently believe harsher punishments should have been meted out. But

23

the very records the plaintiffs rely on for their claim establish that Christensen's rule violations were taken very seriously. (*See Id.*).

Plaintiffs also rely on selective, exaggerated, and misconstrued testimony to argue that Polk County fostered a "sexually charged" atmosphere.  For example, Plaintiffs cite Christensen's testimony that he was "uncomfortable" supervising female inmates and that he believed other jail officers were as well.  (Resp. to Pls.' PFOF ¶¶ 86-87).  In addition to the fact that Christensen's statements about what other jailers thought is inadmissible speculation and hearsay, there is not a shred of evidence – even from Christensen – that jail management was ever made aware of this alleged discomfort. (*Id.*)  Plaintiffs also cite Christensen's uncorroborated testimony that he and other jailers participated in "sexual conversations with inmates," but plaintiffs provide no evidence that anyone in management, let alone any County policymaker, was aware of these conversations.  Plaintiffs cite Captain Nargis's testimony in which he agreed that a certain amount of "dark humor" goes on "among the staff."  (Resp. to Pls.' PFOF ¶ 160).  But plaintiffs omit to mention that Nargis specifically testified that he has not heard, and "wouldn't tolerate," sexual comments about inmates, such as comments about an inmate having "a nice butt," or a "nice body."  (Resp. to Pls.' PFOF ¶¶ 162-163.)  Neither Nargis nor anyone else at the jail, besides Christensen, testified they participated in inappropriate sexual conversations between guards and inmates. (Resp. to Pls.' PFOF ¶¶ 160-165).  Only one other jailer, Officer Pittman, testified he heard Christensen make such a comment where an inmate could hear, and Pittman testified he did not report it to management.  (Resp. to Pls.' PFOF ¶¶ 164-65.)

Finally, plaintiffs rely again on PREA for the argument that jails should implement procedures to prevent male jailers from supervising female inmates while they "shower, perform

bodily functions, and change clothes." (Resp. Br. at 49.) In addition to the fact that Polk County

is not required to implement this or any other PREA standard, doing so in Polk County would

require completely redesigning and re-staffing the jail. (Eiser Dep. 51-61). In addition, male

jailers commonly supervise female inmates, including when they are dressing, using the toilet or

showering (although plaintiffs are mistaken that jail officers at Polk County have an

unobstructed view into the shower, as the women's shower has a door with a small window

(Resp. to Pls.' PFOF ¶ 53; Hompe Dep. 58, 65-66) There is nothing about that arrangement that

violates any Wisconsin law or administrative rule, and it is the practice, at least, at Taycheedah

Prison, where Jail Inspector Hompe was Deputy Warden. (Hompe Dep. 58, 65-66).

## II.   NO REASONABLE TRIER OF FACT COULD FIND THAT CHRISTENSEN WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN HE WAS HAVING SEX WITH THE PLAINTIFFS.

It is undisputed that Christensen had sexual contact on many occasions with Plaintiffs,

which he knew violated his training, Polk County policy, and was a felony under Wisconsin

criminal law. Christensen has testified that the sex was solely for his own gratification and was

not for the purpose of furthering the County's interests. As a matter of settled Wisconsin law, he

was acting outside the scope of his employment at the times of his criminal sexual conduct.

Plaintiffs' argument is wrong because it fails to properly apply settled Wisconsin law to

the undisputed facts of this case, focusing instead on facts that are entirely irrelevant. Further,

they assert—incredibly—that there is still some question of fact about Christensen's intent when

engaging in the sexual misconduct. Finally, perhaps realizing that they cannot meet the elements

of Wisconsin's scope of employment law, Plaintiffs rely on a plethora of federal and state cases

that are distinguishable from this case on facts or law. In some instances, Plaintiffs' cherry

picking of language from cases, or assertions of what cases stand for, is grossly misleading.

A.      **Polk County Did Not Employ Christensen to Have Sex With Prisoners, Which He Did For His Own Gratification.**

Plaintiffs correctly cites the elements of Wisconsin scope of employment law as found in *Olson v. Connerly*, 156 Wis. 2d 488, 497, 457 N.W.2d 479, 483 (1990) and the Restatement (Second) of Agency, § 228 (1958):  an employee's conduct is within the scope of employment if (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; *and* (3) it is actuated, at least in part, by a purpose to serve his employer. *See also* Wis JI—Civil 4035 (Servant: Scope of Employment).  Christensen's undisputed nature of conduct (the first element) and undisputed intent at the time of the conduct (the third element) puts him squarely outside the scope of his employment with the County.

Here, there is no fact to support Plaintiffs' suggestion that when Christensen engaged in sexual contact with Plaintiffs he did so to further the interests of the County, his employer. (PCPFOF ¶ 80-82).  Plaintiffs have failed to identify a disputed issue of fact showing that Christensen's motives at the times of the sexual conduct were anything personal, and they have failed to show his criminal conduct advanced the County's interests in the slightest.

Judge Griesbach's meticulous and well-reasoned decision in *S.V. v. Kratz*, No. 10-C-0919, 2012 WL 5833185 (E.D. Wis. Nov. 12, 2012) contains a discussion of sexual misconduct and scope of employment while applying well-settled *Wisconsin* law:[1]

---

[1] Like the County in its principal brief, Judge Griesbach correctly cites to several Wisconsin state cases not recommended for publication (*Meredith M. v. Pennsylvania General Ins. Co.*, 190 Wis. 2d 468, 528 N.W.2d 91 (Ct. App. 1994) and *S.J.A.J. v. First Things First, Ltd.,* 2000 WI App 233, 239 Wis. 2d 233,  619 N.W.2d 307, *aff'd* 2001 WI 118, 247 Wis. 2d 1029, 635 N.W.2d 292).  Plaintiffs' refusal to address these cases is based on an incorrect interpretation of Wis. Stat. § (Rule) 809.23(3), in which the Wisconsin Supreme Court prohibited parties from citing certain unpublished Wisconsin opinions in state courts, as defined in Wis. Stat. § (Rule) 809.01(4).  Obviously, the Wisconsin Supreme court cannot create rules for the Western District of Wisconsin.

Where an employee knowingly violates express employer policies, civil or criminal laws, licensing regulations, or disciplinary codes in engaging in the conduct at issue, such evidence may be a powerful indication that the employee was acting outside the scope of employment. *See, e.g., Block,* 201 Wis.2d at 807, 549 N.W.2d at 788. Yet, as a rule, employee conduct that is prohibited or even criminal does not necessarily fall outside the scope of employment. For example, other courts have examined whether a police officer's use of force or use of a weapon fell outside the scope of employment, and concluded it is a question of fact that a jury must decide. *See, e.g., Cameron v. City of Milwaukee,* 102 Wis.2d 448, 307 N.W.2d 164, 169 (1981); *Javier v. City of Milwaukee,* 670 F.3d 823 (2012); *Jude v. City of Milwaukee,* No. 06C1101, 2010 WL 2643383 (E.D. Wis. 2010).

These cases are instructive because they highlight an important fact that is not present in cases such as this where the defendant officer or employee is sued for actions that are sexually motivated. The need to use force is an inherent part of a police officer's duties, and the line between when such use of force is justified, or privileged, and when it is unjustified and improper is not always clear or easy to draw. This is especially true when a law enforcement officer is required to immediately respond to a violent or potentially violent situation without the luxury of time to calmly and carefully consider the nature and extent of the risk he is facing. The need to use force under such circumstances is an essential part of a law enforcement officer's job, and frequently it will not be clear whether an officer's use of force was a result of over-zealous policing or whether he or she had actually "fully stepped aside" from their duties as an officer.

The same uncertainty does not exist where an employee engages in sexual misconduct. In such situations it is often easier to draw bright lines because there is no spectrum of acceptable behavior. For a prosecutor in Kratz's position, for example, soliciting a sexual relationship with a victim of a crime he is in the process of prosecuting is never a part of the job description. Thus, courts have often found as a matter of law that sexually motivated acts fall outside the scope of employment. *See, e.g., Block,* 201 Wis.2d at 806, 549 N.W.2d at 788 (finding a sexual relationship between a therapist and patient was not within scope of employment); *St. Francis,* 834 F.Supp.2d at 901 (holding teacher's prohibited romantic relationship with a student was outside the scope of employment); *Doe v. Time Warner Cable of Se. Wisconsin, L.P.,* 07–C–781, 2007 WL 4143226, at *3 (E.D. Wis. Nov. 19, 2007) (denying application of respondeat superior doctrine where manager sexually assaulted a co-worker after walking her to her car on work property); *Meredith M. v. Pennsylvania General Ins. Co.,* Nos. 94–0059, 94–0096, 1994 WL 723794, at *4 (Wis. Ct. App. Dec. 28, 1994) (finding employee acted outside the scope of employment when he sexually assaulted a client); *S.J.A.J. v. First Things First, Ltd.,* 2000 WI App 233, ¶ 23, 239 Wis.2d 233, 619 N.W.2d 307 (holding counselor's actions in fostering a sexual relationship with a patient were beyond the scope of employment); *Hansen v. Bd. of Trustees of Hamilton Southeastern School Corp.,* 551 F.3d 599, 612 (7th Cir. 2008) ("Indiana courts have found whether sexual misconduct is within the scope

27

> of one's employment to be a genuine issue of fact only in circumstances where the employee's job duties involved extensive physical contact with the alleged victim, such as undressing, bathing, measuring, or fitting.").

*S.V.*, 2012 WL 5833185, at *4.  Applying this well-settled Wisconsin law to the undisputed facts of this case, no reasonable trier of fact could conclude that Christensen's sexual misconduct of Plaintiffs was within the scope of his employment with the County.

**B.     Plaintiffs' "Wave of the Future" Line of Argument Ignores Wisconsin Law on Scope of Employment Right Now.**

Plaintiffs' reliance on case law from other federal and state jurisdictions on scope of employment are irrelevant to the settled Wisconsin law.  The same can be said of their citation to Seventh Circuit cases that purportedly support their argument that sexual misconduct by law enforcement is within the scope of employment, as many of them apply Illinois law, not Wisconsin law.  Nevertheless, many of Plaintiffs' Seventh Circuit cases are distinguishable on their face:

- The summary judgment decision and order in *Rankins v. Howard*, No. 11-CV-1153 JPS, 2012 WL 5932029 (E.D. Wis. Nov. 27, 2012), did not even address the scope of employment issue.

- *Bennett v. Pipin*, 74 F.3d 578 (5th Cir. 1996), also did not involve scope of employment, despite Plaintiffs' cherry-picked language, but merely whether the defendant sheriff was acting under color of state law.

- Three cases—*Doe v. Clavijo*, 72 F. Supp. 3d 910 (N.D. Ill. 2014), *Doe v. Roe*, No. 12-C-9213, 2013 WL 2421771 (N.D. Ill. June 3, 2013), and *Estate of Watts v. Heine*, No. 07-CV-644, 2008 WL 4058032 (E.D. Wis. Aug. 26, 2008)—were decisions on motions to dismiss or judgment on the pleadings, requiring the respective courts to assume the plaintiffs' allegations as true.

- In *Carney v. White*, 843 F. Supp. 462 (E.D. Wis. 1994), there was no testimony by the defendant law enforcement officer that that his motives were entirely personal when he engaged in sexual misconduct, unlike Christensen's clear testimony to the contrary in this case.

- In *Doe v. Lee*, 943 F. Supp. 2d 870 (N.D. Ill. 2013), summary judgment was denied in part because there was a dispute over whether a police officer's sexual

contact with a female intern was consensual and what exactly was the intern's employment status.

- In *Lemons v. Howard*, No. 13-C-0331, 2016 WL 3746571 (E.D. Wis. July 8, 2016), there was no Milwaukee Police Department policy that explicitly prohibited sexual contact between police officers and civilians, leaving an issue of fact as to whether the police officer who admitted sexual contact with a 911 caller was acting pursuant to the terms of his employment.

- In *Arias v. Allegretti*, No. 05-C-5940, 2008 WL 191185 (N.D. Ill. Jan. 22, 2008), there was a dispute that a rape even occurred, again, unlike here where all parties agree that Christensen engaged in repeated instances of sexual misconduct.

That leaves *Doe v. City of Chicago* 360 F.3d 667 (7th Cir. 2004), from which Plaintiffs derive their "wave of the future" argument.  Not only does *Doe* not apply Wisconsin law, and not only is Judge Posner's turn of phrase textbook dicta, but the facts of *Doe* are entirely distinguishable from this case.  The defendant officer in *Doe* denied that rape took place (presenting a question of fact, unlike here).

## <u>CONCLUSION</u>

For these reasons, and for the reasons set forth in Polk County's motion for summary judgment and opening brief in support, Polk County respectfully requests that this Court enter an Order:  1) granting summary judgment in favor of Polk County and against both Plaintiffs, 2) awarding Polk County its costs and fees, including attorneys' fees as permitted by law, and 3) granting such other and further relief as the Court deems just and appropriate.

Dated this 16th day of August, 2016.

s/ *Paul D. Cranley*
_____

Charles H. Bohl
Paul D. Cranley
Kurt M. Simatic

HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone:  414-273-2100
Fax:  414-223-5000
Email: Charles.Bohl@huschblackwell.com

33 East Main Street, Suite 300
Madison, WI 53701-1379
Telephone: 608-255-4440
Fax: 608-258-7138
Email: paul.cranley@huschblackwell.com

20800 Swenson Drive, Suite 300
Waukesha, Wisconsin 53186
Telephone: 262-956-6200
Fax: 262-956-6210
Email: kurt.simatic@huschblackwell.com

Attorneys for Polk County

12997898.1